Wake v. Griffin.

CHARLES WAKE, PLAINTIFF IN ERROR, v. PATRICK S. GRIFFIN, DEFENDANT IN ERROR.

1. **Fraudulent Sale of Goods:** POSSESSION RETAINED BY SELLER. A sale of goods is void as to a creditor of the seller if there be no change of possession of the things sold until his execution is levied upon them, without proof that it was made in good faith, and without any intent to defraud creditors.

2. ———: ———. The law will not protect a purchaser, even if he pay a valuable consideration, in a sale of goods made for the purpose of putting them beyond the reach of creditors.

3. ———: ———: EVIDENCE. Evidence of the seller being largely indebted at the time of making a sale of goods is material to prove such sale to have been fraudulent as to creditors.

4. ———: ———: SALE BY HUSBAND TO WIFE: CONSIDERATION. In an alleged sale of goods by the husband to his wife, the only consideration was a pretended loan of money by the wife to him, some five or six years before, which he had ever since used in his business and treated as his own. There was no evidence of any agreement or understanding at the time he took the money, nor any recognition by him at any time that he was to repay it. *Held*, that the wife had no legal claim against her husband for the money, nor would she be permitted, through a voluntary sale, nominally in repayment of that money, to appropriate his property to the exclusion of the claims of *bona fide* creditors.

This was an action of replevin. The defendant, who was plaintiff in the court below, claimed the title

and right of possession to the property in question, by virtue of a bill of sale from John C. McMahon to Mary McMahon, his wife, and a sale from Mary McMahon to himself. Plaintiff, as constable, claimed right of possession of said property by virtue of the levies of two executions issued out of the county court in favor of Steele & Johnson against said John C. McMahon and one John C. Wolfe, March 13, 1877. Upon a trial of the cause in the district court of Platte county, POST, J., instructed the jury, *inter alia*, as follows:

1. It can make no difference that McMahon & Wolfe owed other debts at the time McMahon sold the property in controversy to the witness, Mary McMahon, if in fact you find he did so sell said property to said witness. The only question for consideration on that branch of the case is—did John C. McMahon sell said property to said witness in good faith, for consideration? And it can make no difference when the consideration was paid by her, whether at the time of such sale or prior to said time.

2. If McMahon was honestly indebted to his wife in the sum of $800, or any other sum equal to the value of the goods, he would have a perfect legal right to pay her such debt by transferring to her this or any other property, and she would have a perfect legal right to hold, own, use, sell, or trade such property.

The jury returned a verdict in favor of Griffin, and Wake, the defendant there, brought the case into this court upon a petition in error.

*Millet & Son,* for plaintiff in error.

1. The pretended sale from John C. McMahon to his wife, Mary McMahon, was absolutely void. *Aultman v. Obermeyer,* 6 Neb., 261. *Putnam v. Bicknell,* 18 Wis., 333. *Lord v. Parker,* 3 Allen, 129. *White v. Wager,* 25 N. Y., 328.

2.    Mary McMahon, having permitted her husband, John C. McMahon, to use and invest her money in his own name for more than four years, did not stand in the position of a creditor towards her husband. Therefore the pretended sale from him to her, being without consideration, was absolutely void.    2 Perry on Trusts, sec. 678.    *Glidden, Murphin & Co. v. Taylor*, 16 Ohio State, 509.

3.    The sales from McMahon to his wife, and from her to Griffin, are void for a further reason that there was no change in the possession of the property pretended to be sold.    It remained in possession of McMahon, the original owner, up to the time of the levy by the constable (plaintiff in error).    Gen. Statutes, 1873, chap. 25, p. 393, sec. 11.    The defendant in error failed to prove that there was any change in the possession of the things sold, and the presumption is conclusive that those sales were fraudulent as against the plaintiff.    *Brunswick & Co. v. McClay*, 7 Neb., 137.

*Whitmoyer, Gerrard & Post*, for defendant in error.

The sale from John C. McMahon to his wife is not void on account of the relationship of the parties.    The case of *Aultman v. Obermeyer*, 6 Neb., 261, is not in conflict with the rulings of the court in this case. Wells' Separate Property of Married Women, 370–374. *Beard v. Dedolph*, 29 Wis., 141.    *Stone v. Gazzam*, 46 Ala., 269.    *Barclay v. Plant*, 50 Ala., 509.    *Schaffner v. Reuter*, 37 Barb., 49.    *Woodworth v. Sweet*, 51 N. Y., 8. *Dwyer v. Keefer*, 51 Ill., 525.    2 Kent Com., 166.

LAKE, J.

The property in controversy remaining in the possession and under the control of John C. McMahon after the pretended sales by him to his wife, and by

her to Patrick S. Griffin, the defendant in error, and until after the execution was levied, and there being, as we think, no sufficient evidence that either of said sales was made in good faith on the part of any of the parties to them, they were clearly void as against the execution creditor.

In principle, the case is not different from *Brunswick v. McClay*, 7 Neb., 137. Indeed, in this case, the statutory presumption of fraud arising from such continued occupation of the property by the seller is not only not dispelled, but is overwhelmingly sustained by the evidence on the trial.

It may be, and probably is, true that Mrs. McMahon, five or six years prior to this transaction, let her husband have the eight hundred dollars, as she claims, but there is not a syllable of testimony to show that there was any agreement or understanding between them that he should ever repay it. And not only this, but aside from the fact that McMahon had and used this money, there is absolutely no evidence tending to show good faith on the part of the McMahons or the defendant in error in respect to said sales. But, even if Mrs. McMahon had loaned the money to her husband, under circumstances that would have made it a good consideration for a *bona fide* transfer by him to her of this property in payment, the law will not permit her to use it successfully, as a shield merely, in the perpetration of a fraud upon his creditors by her husband.

Now, even admitting that McMahon was justly indebted to his wife in a sum of money which he, in good conscience, ought to have paid, what does the evidence show has been done about it? *First.* A sale of this property, consisting of billiard tables and fixtures, to his wife nominally in payment of the debt. *Second.* A sale of the same articles by Mrs. McMahon

to her brother, the defendant in error, who is a farmer living several miles from Columbus, where the tables were then in use, at the nominal price of $1,500, taking his note, secured by mortgage upon the same property, in payment. And *Third.* Since the commencement of this replevin suit a sale of the property by the defendant in error to one Thomas Griffin, a nephew of Mrs. McMahon, nominally for $1600, of which amount $1500 were satisfied by the surrender of the note given by Patrick to his sister as aforesaid, and the residue by the individual note of said Thomas.

Now, with Thomas Griffin, the owner of the tables thus paid for, how stands Mrs. McMahon? With the consideration which she received for the sale to her brother surrendered, what has she left to show for the property received from her husband? And how did Thomas Griffin remunerate her for giving up the $1,500 note? These inquiries are naturally suggested, and they are important.

It is disclosed by McMahon's testimony that at the time of these transactions he was indebted to Thomas Griffin upwards of a thousand dollars, which was secured by a mortgage on his real estate; and it is further shown that these tables, either directly or indirectly, went to pay off said indebtedness, which being done, the mortgaged premises were conveyed to Mrs. McMahon.

The design of this manipulation of the property in controversy is apparent. The scheme is too transparent to deceive any one. The ear-marks of fraud are all over the transaction referred to; and the defendant in error was an active participant in the endeavor to cover up the property, as is shown by the stealthy manner in which he removed and disposed of the tables after knowing the execution was levied upon them.

As before stated, the money forming the pretended

consideration for the sale by McMahon to his wife, she
delivered to him several years ago, without, so far as
appears, there being any agreement respecting it.
During all of these years, McMahon has had this
money invested in his business, treating it in all re-
spects precisely as if it were his own means; obtaining
credit, doubtless, on the strength of it, but in no way
recognizing any obligation as resting upon him to re-
pay it.  Under these circumstances, it could not be
successfully contended that Mrs. McMahon had any
claim upon her husband for the money, which the law
recognizes, or would enforce; nor will the law permit
her by means of a voluntary sale, nominally in repay-
ment of that money, to appropriate his property to the
exclusion of the just claims of *bona fide* creditors.

It is contended also, that the court erred in two of
the instructions given to the jury.  By one of these
instructions—the *first* requested on behalf of the de-
fendant in error—the jury were told in substance,
that it was immaterial that McMahon was largely in-
debted at the time of selling the property to his wife.
This was clearly erroneous.  The fact of his owing
other debts at that time was a circumstance which
might account for his evident desire to put his prop-
erty in other hands, and beyond the reach of legal pro-
cess.  The theory of the defense below doubtless was,
that these several sales were mere shams, or if any real
transfer took place, that it was the result of a fraudu-
lent conspiracy and device to put the property out of
the reach of McMahon's creditors.  In this view of the
transactions between the McMahons and the two Grif-
fins—and there is strong evidence in the record to jus-
tify it—the fact that John C. McMahon was largely
indebted was of prime importance, and the jury ought
to have been so informed.  Not much headway would
be made in proving to a jury that a sale of chattels

had been made for the purpose of defrauding creditors without testimony showing the seller to have been indebted at the time of making it.

As to the other instruction complained of, when abstractly considered, we see no objection.   If there were any evidence of McMahon being really indebted to his wife at the time, it would have been well enough; but there being no such evidence, it ought not to have been given.

For these reasons the judgment is reversed, and the cause remanded to the court below for a new trial.

REVERSED AND REMANDED.