## W. A. HEDRICK v. STRAUSS, UHLMAN & GUTHMAN.

FILED NOVEMBER 8, 1894.    No. 5243.

1. Instructions will not be reviewed where they are not pointed out in both the motion for a new trial and the petition in error.

2. A purchase of property of an insolvent debtor, with intent to aid in hindering, delaying, or defrauding his creditors, is void as to such creditors, though a full consideration is paid for the property.

3. In order to constitute one an innocent purchaser of property sold for the purpose of defrauding the creditors of the vendor, the whole consideration must be actually paid before the purchaser had notice of the fraudulent intent. If, after part of the consideration has been paid, the purchaser receives notice of the fraud, he will only be entitled to protection to the extent of the consideration paid, or parted with, before notice. As to the purchase price not paid, such vendee will not be regarded as an innocent purchaser of the property.

4. Instructions. *Held,* That defendants' third instruction was applicable to the evidence in the case, and that the trial court did not err in giving the same to the jury.

5. Certain paragraphs of the charge of the court not considered, since the alleged errors in their giving are not sufficiently assigned in either the motion for a new trial or the petition in error.

6. In order to a review of instructions by the appellate court, an exception must have been taken to each specific instruction claimed to be erroneous. A general exception to instructions given or refused is unavailing.

7. Questions for Special Findings. It is within the sound discretion of the trial judge to submit to, or withhold from, the jury questions for special findings, and his rulings in that regard will not be disturbed unless a clear case of abuse of discretion appears. Rule applied.

8. Assignments of Error. This court will not consider objections to the admission of testimony when the particular ruling is not pointed out in the petition in error.

9. An assignment of error not included in the points relied on for a reversal will be deemed waived.

ERROR from the district court of Hitchcock county. Tried below before COCHRAN, J.

The facts are stated in the opinion.

*B. G. Burbank* and *House & Blackledge*, for plaintiff in error.

*C. C. Flansburg*, for defendants in error:

A buyer who pays the consideration after notice of fraud is not entitled to protection as an innocent purchaser for value. (Wait, Fraudulent Conveyances, sec. 369; *Dougherty v. Cooper*, 77 Mo., 532; *Arnholt v. Hartwig*, 73 Mo., 485; *Bishop v. Schneider*, 46 Mo., 472; *Dixon v. Hill*, 5 Mich., 408; *Matson v. Melchor*, 42 Mich., 477; *Starin v. Kelly*, 88 N. Y., 421; *Bush v. Collins*, 35 Kan., 535; *Riddell v. Munro*, 52 N. W. Rep. [Minn.], 141; *Becker v. Dunham*, 27 Minn., 32.)

NORVAL, C. J.

This was an action in replevin brought by plaintiff in error against Thomas H. Britten, sheriff of Hitchcock county, to recover possession of a stock of general merchandise formerly owned by one E. O. Johnson. At the time the order of replevin was issued and served, the stock of goods in dispute was held by the sheriff by virtue of a writ of attachment sued out by the district court of said county by Strauss, Uhlman & Guthman against the said E. O. Johnson. On motion of said Strauss, Uhlman & Guthman, they were substituted, by order of the court, as defendants in the replevin suit, in lieu of the sheriff. Upon the trial of the latter case the jury returned a verdict finding that the defendants were entitled to the possession of the goods at the commencement of the action, and that the value of such possession is the sum of $878.09. Nominal damages were assessed for the detention of the property. A motion for a new trial was filed by the plaintiff, which was overruled, and judgment was entered by the court upon the verdict for the defendants.

It is undisputed that the property in controversy herein was, on and prior to the 28th day of April, 1890, owned by E. O. Johnson, who was engaged in the general retail merchandise business at Stratton, in Hitchcock county, and on which date his indebtedness to wholesale houses and others aggregated between $4,000 and $5,000. The amount which he owed the defendants was $850 and interest. On the date aforesaid Johnson transferred his entire stock of goods to the plaintiff, and a few days later the said attachment was levied thereon. The theory of the defendants is that said transfer to plaintiff was colorable merely, made for the purpose, and with the intent of hindering, delaying, and defrauding the defendants and other creditors of Johnson, and that plaintiff was a party to the fraud. On the other hand, the plaintiff insists that he purchased the

stock in good faith, for a valuable consideration, without notice.

Complaint is made by counsel in the brief of plaintiff of the giving of instructions 1, 2, 3, 4, and 5, asked by the defendants, which are as follows:

"1. The court instructs the jury that a conveyance or sale of property made with intent, on the part of the vendor, to delay, hinder, or defraud a particular creditor in the collection of his debt is void as against all creditors of the vendor, if the intent be known to, or participated in by, the vendee, although made for a good and valuable consideration.

"2. The jury are further instructed that if they find from the evidence that the plaintiff herein, W. A. Hedrick, knew at the time he purchased the stock of goods from E. O. Johnson that said Johnson had a fraudulent purpose for making the sale, and bought with that knowledge, then said Hedrick is not a purchaser in good faith; and if you find said sale was made by said Johnson for the purpose of hindering and delaying or defrauding his creditors, and that said Hedrick had knowledge of the facts and circumstances from which such fraudulent intent and purpose might reasonably and naturally be inferred by an ordinarily cautious person, then such transfer is fraudulent and void as against the rights of the creditors, and you will find for the defendants.

"3. The court instructs the jury that the intent to defraud is something distinct from mere intent to delay; and if the jury find from the evidence that said Johnson had no intent to defraud, but that he made the transfer as a shift merely to gain time in which to pay his debts, yet if the effect of said transfer would necessarily be to delay and hinder creditors in collecting their debts, and plaintiff knew or was in possession of facts which, upon inquiry, would have given him full knowledge of the effect of said transfer on the rights of creditors, then said sale to plaintiff was void as to creditors, and you will find for the defendants.

"4. The court instructs the jury that although they may find from the evidence that plaintiff gave to said Johnson the full value of the stock in trade and land, yet if they find from the evidence that a portion of said payment made by said Hedrick was two notes of said Hedrick for the sum of $1,500 each, and at the time of making the trade, and as a part of the consideration thereof, it was secretly agreed that the notes should not be transferred by said Johnson, but that he should hold them and receive his pay thereon out of the store, or in trade, as Hedrick becomes ready to pay, this, the court instructs you, being an advantage to the debtor, is denominated by the law a secret trust, and would render the sale void as to the creditors of said Johnson, and you will, if you so find, render your verdict for the defendants.

"5. The court instructs the jury that a purchaser of an entire stock of goods cannot close his eyes to the circumstances under which he purchases the stock, and the probable effect the means of payment will have upon the creditors of the seller, in hindering, delaying, or defrauding them of their claims; and if the effect of such sale will be to hinder and delay, if not to defraud, such creditors, he buys at his peril; and if you find that the plaintiff herein knew, or had reason to believe, that the effect of his alleged purchase would be to hinder and delay, if not to defraud, the creditors of E. O. Johnson, the seller, he is not a *bona fide* purchaser, and you will find for the defendants."

Objections to instructions cannot be raised for the first time in the supreme court, but, in order to have instructions reviewed, the attention of the trial court must have been challenged thereto in the motion for a new trial. The first and second instructions, therefore, will not be considered, since no complaint was made of either of them in the motion for a new trial, nor in the petition in error.

No claim is made in the brief filed that the third instruction given at the request of the defendants is incorrect

as an abstract legal proposition, but the contention here is that it is not based upon any evidence in the case and assumes that the plaintiff knew, or was in possession of facts which, if pursued, would have given him knowledge of Johnson's indebtedness. The criticism that this instruction assumes that the plaintiff was aware of the existence of any fact or state of facts which tended to impeach the *bona fides* of the sale is not merited. The language is certainly not susceptible of the construction placed upon it by counsel. It submitted to the jury for their determination, from the evidence, what the facts were upon the question of fraudulent intent, and then informed them, if a certain state of facts were found to exist, that the transfer was void as to the creditors of Johnson. It is urged that this instruction is not based upon the evidence, because there is no testimony in the record tending to establish that plaintiff knew of Johnson's indebtedness, or that the transfer was made with the intent to defraud, or that the plaintiff knew of such purpose. It is not seriously contended that the motive which induced Johnson to dispose of his stock was not to defraud his creditors. We think the jury were justified in inferring fraudulent intent from the fact that Johnson's indebtedness was so great that the transfer had the effect to hinder and delay his creditors in the collection of their claims against him, when taken in connection with the facts and circumstances surrounding the transaction disclosed by this record. An important inquiry is, did the plaintiff participate in the fraud, or did he purchase the property in good faith, for a valuable consideration, and without notice of the motive and purpose of Johnson in making the sale? The alleged consideration for the property was $6,600, which Mr. Hedrick testified on the trial was paid in the following manner: A quarter section of land in Rawlins county, Kansas, of the value of $2,000, was taken on the deal by Johnson at that sum, $300 in cash, a span of mules for $300, a $300 note against Schram

Bros., another note for $100 signed by W. C. McErvin, and three promissory notes executed by the plaintiff to Johnson, aggregating $3,000, two being for $750 each, due in one year from date, and one for $1,500, maturing in two years; that the remainder of the consideration, something over $500, was not evidenced by a note or other writing, but was left as an open account payable upon demand. The plaintiff further testified that it was mutually agreed between the parties at the time of the transfer that Johnson should not negotiate the said notes given by Hedrick, aggregating $3,000, but the same should be held by Johnson and payments were to be received thereon from time to time out of the store or in trade if the maker so desired; that he made inquiry of Johnson whether the property was incumbered, and was informed that there were no liens of any kind thereon, and that plaintiff did not know, prior to the sale, of Johnson's indebtedness. The testimony of E. O. Johnson as to the consideration of the sale is the same as given by Hedrick, excepting that the former contradicts the latter as to the number of notes which made up the $3,000. Johnson swears that there were but two notes made by Hedrick at the time of the sale, each for the sum of $1,500; that some time afterwards one of these was taken up by plaintiff, he executing instead thereof two notes, each for $750. It was shown that Hedrick and Johnson each had made statements out of court contradicting, in important particulars, their testimony given on the trial; that shortly after the sale, in a conversation with Charles H. Mehagan and C. C. Flansburg, plaintiff and Johnson each stated that the consideration for the property was between $5,500 and $6,000, consisting of $300 in cash, mules valued at $300, a quarter section of land worth $2,000, and promissory notes to the amount of $3,000, executed by plaintiff; that not a word was said about the $300 note of Schram Bros., or the $100 note on McErvin, or that $500 of the purchase price re-

mained in an open account. During the same conversation plaintiff, upon being interrogated by Mr. Mehagan regarding his knowledge of Johnson's indebtedness or financial condition at the time of the purchase, replied he "knew that there were no liens on the stock at the time he bought, and that was all he cared a damn for." This testimony, if true, shows that the rights of creditors did not concern plaintiff. Perhaps the evidence in the case heretofore alluded to is alone sufficient on which to base a conclusion, that prior to the transaction Hedrick was aware Johnson was insolvent, and that plaintiff had knowledge of the fraud. It certainly was ample for that purpose, when taken in connection with the undisputed fact that plaintiff paid Johnson the amount of the open account, besides some $1,500 or $1,600 on his three notes, after he was informed of Johnson's financial standing and knew his purpose in making the sale; hence, plaintiff, in no view of the case, is entitled to the protection which the law affords an innocent purchaser for value and without notice. To have constituted him such a purchaser, the whole consideration must have been paid prior to receiving notice of the fraud. If it be conceded that Hedrick, at the time the contract of purchase was made, had no notice of the fraudulent intent; still, having paid over more than $2,000 of the consideration after he had been apprised of the fraudulent character of the transaction, he would, at most, only be entitled to protection to the extent of the amount of the consideration paid, or parted with, before he received such notice. (*Dixon v. Hill*, 5 Mich., 408; *Bush v. Collins*, 35 Kan., 535, and cases cited in brief of defendants.) The Kansas case, in the principal facts, is quite similar to the one at bar. Chief Justice Horton, in delivering the opinion of the court, uses the following apt and appropriate language: "Where a valuable consideration is paid in good faith for a transfer from the vendor, who acts with fraudulent intent, the interest of the creditor is superseded. The in-

nocent purchaser, in such a case, having parted with value upon the faith of the vendor's possession and ownership of the property, acquires not only the legal title, but an equity which is paramount to that of the creditors of the failing and fraudulent debtor. So, in this case, if it be conceded that the transaction between Collins and McMillan was in good faith, so far as Collins is concerned, yet if there was no consideration, the interest of the creditors is paramount to any claim of Collins. More than this, the protection to which a *bona fide* purchaser without notice is entitled extends only to the money which has been actually paid, or to securities or property which have been actually appropriated by way of payment before notice, and notice before actual payment of all the purchase-money is binding as to the consideration not paid, in the same manner as notice had before the contract. In other words, to entitle a person to the character of a *bona fide* purchaser without notice, he must have acquired the legal title and have actually paid the purchase-money, or parted with something of value by way of payment before receiving notice. And even if notice is only after a payment of a part of the purchase-money, the purchaser is only entitled to reimbursement for the money paid." It is said that Hedrick paid the full value of the stock purchased by him. Conceding this to be true, yet that fact alone would not protect him, if Johnson was actuated by a fraudulent motive in making the sale, and plaintiff had notice thereof or knowledge of facts sufficient to put an ordinarily prudent man on inquiry. This court has held, and the proposition is abundantly sustained by decisions elsewhere, that a purchaser of property of an insolvent and failing debtor, with intent to aid in hindering, delaying, or defrauding his creditors, is invalid as to the creditors, though a full consideration is paid to such purchase. (*Tootle v. Dunn*, 6 Neb., 93; *Wake v. Griffin*, 9 Neb., 47.) The jury have passed upon the question of fraudulent intent in this case, and their finding, being based upon

the testimony, will not be disturbed. We are likewise fully persuaded that the third instruction given at the defendants' request was predicated upon the evidence, and that the same was not erroneous.

The fourth and fifth instructions, set out above, are claimed to be erroneous, because of a lack of evidence in the record whereon to base the same. Neither of these paragraphs of the instructions can be reviewed on account of the insufficiency of the assignment in both the motion for a new trial and petition in error, the assignment in each paper being in this language: "The court erred in giving the third, fourth, and fifth instructions asked for by defendants." Similar assignments this court has repeatedly held, since this cause was tried in the court below and briefed in this court, would be considered no further than to ascertain that any one of the instructions therein named was rightfully given. Inasmuch as we have reached the conclusion that no error was committed in giving the third instruction specified in the foregoing assignment, the fourth and fifth instructions will not be reviewed. There is another ground, equally as tenable, upon which we might place our refusal to consider said instructions, namely, no proper exception was taken to either of them in the court below. The record discloses that the plaintiff excepted in these words: "To the giving of said instructions 3, 4, and 5 asked by the defendants, and to each of said paragraphs, plaintiff there and then duly excepted." In at least three instances this court has decided such an exception too general to be availing; and further, that each paragraph of a charge must be specifically excepted to when read. (*McReady v. Rogers*, 1 Neb., 124; *Dodge v. People*, 4 Neb., 220; *Brooks v. Dutcher*, 22 Neb., 644.)

The refusal to give certain instructions requested by plaintiff is assigned for error. A general exception merely was entered by the plaintiff to the overruling of his re-

quests to charge, hence plaintiff is not in a position to have his instructions considered or reviewed by this court. Another point made is that the court below erred in refusing to submit to the jury five requests for special findings asked by the plaintiff.   It is within the sound discretion of the trial judge to submit to, or withhold from, the jury questions for special findings, and his ruling in that regard will not be reviewed unless a clear abuse of discretion appears. (*Floaten v. Ferrell,* 24 Neb., 353; *Nebraska & Iowa Ins. Co. v. Christiensen,* 29 Neb., 581; *Atchison, T. & S. F. R. Co. v. Lawler,* 40 Neb., 356.)   An examination of the record convinces us that plaintiff was not prejudiced by the failure of the court to give to the jury his requests for special findings.   There certainly was no abuse of discretion.

It is finally argued in the brief that the court erred in permitting defendants to prove by the witness C. C. Flansburg certain statements of Johnson, the vendor, in derogation of plaintiff's title, made long after the purchase. From the bill of exceptions it appears that testimony of that character was permitted to be given by Mr. Flansburg, over the objection and exception of plaintiff.   The ruling, however, cannot be reviewed, inasmuch as the decision upon the admission of such testimony is not assigned for error in the petition is error.   The only complaint made in the petition in error relating to the admission of evidence upon the trial is the eighth assignment, wherein it is alleged that error was committed in admitting on cross-examination the testimony of Johnson as to the disposition he made of the money and property which he received from the plaintiff.   It is obvious that this is insufficient to present for review the alleged error in admitting the testimony of Mr. Flansburg, and as the eighth assignment is not included in, or covered by, the points relied on by plaintiff in the brief, it will be deemed abandoned.   We discover no error in the record, and the judgment is therefore

AFFIRMED.