AMERICAN FIRE INSURANCE COMPANY OF PHILADELPHIA V. HARVEY LANDFARE ET AL.

FILED NOVEMBER 3, 1898. No. 8369.

1. **Petition:** CONSTRUCTION. A petition, when assailed for the first time after judgment, will be sustained if the averments therein constitute a cause of action, even though informally or indefinitely stated.

2. **Insurance:** OWNERSHIP OF PROPERTY: EVIDENCE. Policy of fire insurance is *prima facie* an admission by the insurer of the title or ownership of the insured to the property covered by the policy.

3. **Deeds:** ACCEPTANCE: EVIDENCE. The introduction in evidence of a recorded deed by the grantee mentioned therein in support of his claim of title to the property is sufficient to establish his acceptance of such deed.

4. **Evidence:** NEWSPAPERS: KNOWLEDGE OF CONTENTS: PRESUMPTIONS. One is not bound to know at his peril all that is contained in a newspaper to which he is a subscriber. He is chargeable with knowledge of all matters contained in such publication which he has seen or read, as well as all matters of advertisements published in such newspaper in obedience to some statute or legal order, and which the law has made conclusive of his rights whether he ever knew it or not.

5. ——: ——: ——: ——. Proof of the publication in a newspaper as an item of news of the giving of a mortgage upon certain real estate is alone insufficient to establish that a particular subscriber had actual knowledge of the existence of such mortgage.

6. **Evidence Upon Issue Withdrawn from Jury:** REVIEW. Error can-

not be predicated upon the admission of evidence to establish a particular issue, where such issue is subsequently withdrawn from the consideration of the jury by the court in its instructions.

7. Instructions: ESTOPPEL. A party cannot complain of the giving of an instruction in harmony with one which he requested.

8. ———: ———. One who tenders an instruction which is given, which assumes the existence of evidence to establish an issuable fact in the case, cannot afterwards be heard to assert that there was no evidence received tending to prove such fact.

9. ———: EXCEPTIONS. A general exception to instructions is insufficient. Where a charge consists of several paragraphs, there must be an exception to each instruction claimed to be erroneous.

10. ———: ASSIGNMENTS OF ERROR. An assignment in a motion for a new trial that a group of instructions is erroneous, is insufficient if one of them is without error and was properly given.

11. Insurance: PARTIES: JUDGMENT: HARMLESS ERROR. Error in entering a judgment for a stated sum upon an insurance policy in favor of two joint plaintiffs, the insured and the owner of a mortgage on the insured premises, where the latter alone was entitled to recover the full amount of the loss, is harmless, since it is immaterial to the defendant whether it pays the sum to one or both, and the payment of the judgment would be a complete bar to any subsequent action brought by either plaintiff upon the same policy.

12. Special Findings. It is within the discretion of the trial court to submit or withhold questions for special findings of the jury; and its ruling in that regard will not be molested unless an abuse of discretion clearly appears.

13. Costs: REVIEW OF TAXATION. A motion in the lower court to retax costs is unnecessary to review a judgment awarding an attorney's fee in an action on an insurance policy.

14. ———: INSURANCE: ATTORNEY'S FEE. On rendering judgment on a policy of insurance on real property, a reasonable attorney's fee may be allowed plaintiff and taxed as costs without regard to the date the risk was written.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J. *Affirmed.*

The facts are stated in the opinion.

*E. Wakeley* and *A. C. Wakeley,* for plaintiff in error:

The introduction in evidence of the newspaper article

for the purpose of fixing upon insurer knowledge of liens on the insured property, in absence of testimony that insurer's agents saw the article, was prejudicial error. (*King v. Paterson & H. R. R. Co.*, 29 N. J. L. 92; *Brundred v. Del Hoyo*, 20 N. J. L. 328; *Fosgate v. Herkimer Mfg. & Hydraulic Co.*, 9 Barb. [N. Y.] 287; *Goetz v. Bank of Kansas City*, 119 U. S. 551; *Watkins v. Peck*, 13 N. H. 373.)

Landfare had no insurable interest in the premises. (*Freeman v. Fulton Fire Ins. Co.*, 38 Barb. [N. Y.] 247; *Gilbert v. North American Ins. Co.*, 23 Wend. [N. Y.] 43; *Fonda v. Sage*, 46 Barb. [N. Y.] 123; *Jackson v. Phipp*, 12 Johns. [N. Y.] 418; *Maynard v. Maynard*, 10 Mass. 458; *Samson v. Thornton*, 44 Mass. 281; *Herbert v. Herbert*, Breese [Ill.] 360; *Kingsbury v. Burnside*, 58 Ill. 310.)

The commencement of foreclosure proceedings vitiated the policy. (*Meadows v. Hawkeye Ins. Co.*, 62 Ia. 387; *Brunswick Savings Institution v. Commercial Union Ins. Co.*, 68 Me. 313; *Bishop v. Clay Fire & Marine Ins. Co.*, 45 Conn. 430; *Titus v. Glenns Falls Ins. Co.*, 81 N. Y. 417; *McIntire v. Norwich Fire Ins. Co.*, 102 Mass. 230.)

Change of possession of insured property invalidated the policy. (*Wenzel v. Commercial Ins. Co.*, 67 Cal. 438; *Carey v. German-American Ins. Co.*, 54 N. W. Rep. [Wis.] 18; *Burr v. German Ins. Co.*, 54 N. W. Rep. [Wis.] 22.)

Plaintiffs were not entitled to a joint judgment. (*Brent v. Tinebaugh*, 12 B. Mon. [Ky.] 87; *Bell v. Allen*, 53 Ala. 125; *Gerry v. Gerry*, 11 Gray [Mass.] 381; *Doremus v. Selden*, 19 Johns. [N. Y.] 213; *Lockhart v. Power*, 2 Watts [Pa.] 371; *Ulmer v. Cunningham*, 2 Me. 117; *Governor v. Webb*, 12 Ga. 189; *City of Chicago v. Speer*, 66 Ill. 154; *Murphy v. Orr*, 32 Ill. 489; *Davey v. Dakota County*, 19 Neb. 721; *Boldt v. Budwig*, 19 Neb. 741; *Palmer v. Davis*, 28 N. Y. 242; *Peabody v. Washington County Mutual Ins. Co.*, 20 Barb. [N. Y.] 339; *Rowe v. Bacigalluppi*, 21 Cal. 633; *Phenix Ins. Co. v. Omaha Loan & Trust Co.*, 41 Neb. 847; *Hartford Fire Ins. Co. v. Olcott*, 97 Ill. 458; *Hastings v. Westchester Fire Ins. Co.*, 73 N. Y. 146.)

Insurer did not waive provisions of the policy. (*Ryan*

*v. Springfield Fire & Marine Ins. Co.*, 46 Wis. 671; *Putnam Tool Co. v. Fitchburg Fire Ins. Co.*, 145 Mass. 269; *Weed v. London & Lancashire Fire Ins. Co.*, 116 N. Y. 106; *Phœnix Ins. Co. v. Lawrence*, 4 Met. [Ky.] 9; *Richards v. Wetmore*, 66 Cal. 365; *Wheaton v. North British & Mercantile Ins. Co.*, 76 Cal. 432; *McCormick v. Orient Ins. Co.*, 86 Cal. 262; *Murphy v. People's Equitable Mutual Fire Ins. Co.*, 89 Mass. 239; *Orient Ins. Co. v. Williamson*, 98 Ga. 464; *Shaffer v. Milwaukee Mechanics Ins. Co.*, 46 N. E. Rep. [Ind.] 557.)

References as to error in instructions: *Dwelling-House Ins. Co. v. Brewster*, 43 Neb. 528; *Kelsey v. McLaughlin*, 10 Neb. 6; *Dinsmore v. Stimbert*, 12 Neb. 433; *School District v. Holmes*, 16 Neb. 486; *Insurance Co. of North America v. Bachler*, 44 Neb. 560; *Ætna Ins. Co. v. Resh*, 40 Mich. 241; *Bowman v. Franklin Fire Ins. Co.*, 40 Md. 620.

*Hall & McCulloch, contra.*

NORVAL, J.

On November 26, 1888, the American Fire Insurance Company of Philadelphia, through its Omaha agents, Murphy & Lovett, issued its policy of insurance whereby, in consideration of the sum of $52.50 paid as premiums, it insured Harvey Landfare against loss or damage by fire for the period of one year from that time in the sum of $1,750, on his two-story building, used mainly for the storage of cutters, carts, and carriages, located in block 15, in Albright's Choice, an addition to South Omaha. The policy contained this clause: "Loss, if any, first payable to John Wendell as his interest may appear." On May 3, 1889, the insured building was destroyed by fire, and March 5, following, this action was instituted on the policy by Landfare and Wendell, who jointly obtained a verdict and judgment for the face of the policy, with interest thereon, and an attorney's fee of $200. The defendant has brought the record of the proceedings to this court, alleging numerous errors.

It is argued in the brief of the company that Landfare had no insurable interest in the property covered by the policy; that there is no averment in the petition of any ownership in him; and that there was no proof adduced of his insurable interest upon the trial. The petition avers the execution and delivery of the policy in suit by defendant, whereby "it agreed and did insure the said Harvey Landfare to the amount of $1,750, for the term of one year from that date, on his two-story, slate-roof building, known as the 'Factory Building,'" etc. This was a sufficient allegation that the insured premises were owned by the insured when the policy was taken out, especially as no objection was made to the petition until after verdict. A petition, when assailed for the first time after judgment, will be sustained if the facts averred therein constitute a cause of action, although informally and indefinitely stated. (*Powers v. Powers*, 20 Neb. 529.)

To the objection that there is no proof that Landfare had any interest or title to the property insured, a sufficient answer is that the policy itself, the issuance whereof is admitted in the answer, is sufficient *prima facie* to show the ownership or title of Landfare to the property. (*Western Horse & Cattle Co. v. Scheidle*, 18 Neb. 495; *Farmers & Merchants Ins. Co. v. Peterson*, 47 Neb. 747.) But Landfare's insurable interest was established by proofs aside from the *prima facie* case made out by the policy. The defendant concedes in its briefs that the Omaha Carriage & Sleigh Company formerly owned and occupied the insured premises. It appears that on August 23, 1888, said company, through its president and secretary, executed a deed to the property to the plaintiff Landfare, subject to certain mortgages, which deed was placed upon record September 1, 1888, and before the policy was issued. Who caused the instrument to be recorded is not shown, and it is argued that a recorded deed is *prima facie* evidence alone of a delivery, and not of the acceptance thereof by the grantee. Whether the rule is thus correctly stated we need not now determine,

since Landfare introduced in evidence on the trial the deed, or rather the record thereof, which was sufficient proof of his acceptance of the conveyance.

Complaint is made of the admission as evidence of the following article in the Omaha *Evening World* of August 25, 1888:

"Last night's *World* contained a statement that the Omaha Carriage & Sleigh Company had placed mortgages on its property. The following mortgages were given yesterday:

| | |
|---|---:|
| First chattel mortgage, Churchill Parker | $10,641 |
| Second chattel mortgage, Star Cutter Co | 6,554 |
| Third chattel mortgage, N, B. Van Slyck | 1,000 |
| Fourth chattel mortgage, Douglas County Bank, | 1,569 |
| Fifth real estate mortgage, Star Cutter Co | 6,795 |
| Sixth real estate mortgage, Mansfield Buggy Co., | 2,348 |
| Total | $28,907" |

The insured premises were formerly owned by the Omaha Carriage & Sleigh Company, and it had executed a mortgage thereon in favor of the Star Cutter Company, and the same was a lien upon the property at the time the policy in suit was issued. It was claimed by the insurance company that it had no knowledge of the existence of said real estate mortgage, and that the lien of the mortgage rendered the policy void. The newspaper article was read in evidence for the purpose of showing that the agents of the company issuing the policy had actual knowledge that the insured property was incumbered by mortgage to the Star Cutter Company. The article was not one which the law required to be inserted in a newspaper, and the publication thereof was not alone sufficient to establish that the agents who issued the policy, or any officer of the insurance company, possessed knowledge of the lien of the mortgage to the Star Cutter Company. The precise principle was decided in *State Bank of Lushton v. Kelley*, 47 Neb. 678. In that case the question involved was whether the bank had knowl-

edge of the existence of a chattel mortgage held by the defendant. RAGAN, C., speaking for the court, observed: "The only evidence in the record which tends to show, if that does, that the bank officers had any knowledge or notice of the mortgage held by the Kelley Company is this: The bank was a subscriber for a 'bulletin' issued by some one in York county, which bulletin gave the names of parties making mortgages filed in York county and a description of the mortgaged property. It was shown that a bulletin which came to the bank soon after July 23, 1891, recited that John and Peter Peters had executed a chattel mortgage to the Kelley Company on a threshing machine, such as the one in controversy, and that this mortgage had been filed in the clerk's office of York county, but there is no evidence in the record that any officer or agent of the bank ever read this bulletin. If the jury had specially found that the officers of the bank had actual knowledge or notice of the mortgage of the Kelley Company, the evidence would not have supported the finding, and the court therefore erred in giving the instruction." In the case at bar it was shown that Murphy & Lovett, the agents who issued the policy, were at the time subscribers of the Omaha *Evening World*, but there is no evidence in the record that they ever saw or knew of the article in question. Its publication was not alone sufficient to impart notice to such agents, or to the company, of the lien of the mortgage to the Star Cutter Company. We quote with approval the following language of the supreme court of New Jersey in *King v. Paterson & H. R. R. Co.*, 29 N. J. L. 92: "And we cannot lawfully hold that any person is bound to know at the peril of his legal rights all that is in all the newspapers published in his vicinity, or in any one of them when he may be surrounded by dozens of different ones, unless it may be some notice or advertisement that is published in obedience to some positive law or legal order, and which the law has made conclusive of his rights whether he ever knows it or not." While the newspaper article

introduced in evidence in this case was insufficient, standing alone, to establish knowledge on the part of the defendant of the existence of the mortgage on the insured premises in favor of the Star Cutter Company, yet, had proof of the publication been followed by evidence tending to show that the article was read by the agents issuing the policy, or some officer of the company, it would have been sufficient for the purpose of fixing actual knowledge of the mortgage lien upon the insurance company. Proof of the publication was one link in the chain to fasten notice or knowledge upon the company, but the other link was never supplied by the proof. The article in question was not incompetent evidence, but was merely insufficient of itself to prove the point in the case it was offered to establish, namely, that the insurance company had actual knowledge of the incumbrance on the property. The defendant could not have been prejudiced by admission in evidence of this newspaper article or in receiving testimony relating to the publicity of the failure of the Omaha Carriage & Sleigh Company, for whether the defendant had knowledge of the existence of any liens upon the insured premises at the time the policy was written was a matter which was not submitted by the court to the jury in its instructions. The court, in the third paragraph of its instructions, told the jury that the undisputed evidence showed there were mortgages existing against the insured premises at the date of the policy which were not disclosed by plaintiffs, and directed the jury "that such concealment rendered the policy void, and the plaintiffs are not entitled to recover unless the defendant, after the policy was written, and prior to the fire, became aware of their existence and waived objections thereto." It is too plain to admit of discussion that this portion of the charge of the court eliminated from the case, and took from the consideration of the jury, all question whether the company had notice or knowledge of any mortgages on the premises when the policy was issued, and therefore cured any

error that may have been committed in the admission of evidence to establish such withdrawn issue.

It is argued that the policy became invalid because of the breaches of the conditions thereof. The policy contained a clause to the effect that it should be null and void if the insured should conceal any fact material to the risk, whether in the written application or otherwise. Evidence was adduced tending to show that the existence of certain incumbrances against the property was concealed from the company, and that such incumbrances affected materially the risk. The court submitted to the jury the question whether the incumbrances were material to the risk, which was error, since that was a question of law for the court. (*Insurance Co. of North America v. Bachler*, 44 Neb. 560.) But the giving of such instruction was not reversible error, because the insurance company requested, and the trial court gave, an instruction embodying the same proposition. (*Jonasen v. Kennedy*, 39 Neb. 314; *Richards v. Borowsky*, 39 Neb. 774; *City of Omaha v. Richards*, 49 Neb. 244.) Upon this branch of the case the court, at the request of the defendant, gave this instruction to the jury:

"6. It is in evidence without dispute that when the policy was issued papers had been filed and were of record in Douglas county purporting to create and claiming liens upon the property, including the building insured,—one being the mortgage for the sum of sixty-three hundred dollars ($6300) and over, executed, on or about the 23d day of August, A. D. 1888, by the Omaha Carriage & Sleigh Company, as the owner of the property, to the Star Cutter Company; also a claim of mechanic's lien filed by the Chicago Lumber Company against said Carriage & Sleigh Company on or about December 5, 1887, for the sum of twenty-five hundred ($2500) dollars; also a claim of mechanic's lien filed by Howard & Bradford against said carriage and sleigh company on or about December 8, 1888, for $115 and over.  Evidence has been given tending to show that

these facts were material to the risk. If you find they were and that the existence of any such material fact was concealed from the insurance company agents until after the policy was issued, this was a violation of the conditions thereof, rendering the policy void; and unless you find that the authorized agents of the insurance company subsequently obtained knowledge thereof and with such knowledge waived the conditions, you must find for the defendant."

The foregoing instruction assumes that there was evidence before the jury from which they could find that the authorized agents of the defendant, after the issuance of the policy, obtained knowledge of the incumbrance and with such knowledge waived the condition of the policy now invoked. If such evidence was adduced, and, in view of the instruction, we must presume that there was, then the jury were justified in finding that there had been a waiver by the defendant of the particular clause in the policy relied upon to defeat a recovery.

It is insisted that the policy was invalidated by reason of the title to the insured premises having become involved in litigation by and through the commencement of a suit several months after the issuance of the policy by the Chicago Lumber Company against the Omaha Carriage & Sleigh Company to foreclose a mechanic's lien. The quoting of the eighth instruction given at the request of the defendant is a complete answer to this assignment of error and argument based thereon by counsel for the insurance company. The instruction reads:

"8. It appears by uncontradicted evidence that subsequently to the issue of the policy, on December 22, 1888, suit was commenced to foreclose the mechanic's lien claimed by the Chicago Lumber Company; that in the same suit Howard & Bradford also asked a foreclosure of the mechanic's lien claimed by them against the property, and that afterwards, on February 23, 1889, several parties intervened in said action, asking for a foreclosure of the mortgage given upon August 23, 1888, by the

Omaha Carriage & Sleigh Company to the Star Cutter Company, and that a decree was afterwards rendered in said action foreclosing the mechanic's lien above mentioned and the Star Cutter Company's mortgage. You are instructed that the proceedings therein involved the title to the insured premises in litigation; that this, by the terms of the policy, rendered it void, and that unless you find that some agent or agents of the company obtained knowledge thereof and with such knowledge waived this condition of the policy, you must find for the defendant."

It cannot escape notice that the court, at the request of the defendant, directed a verdict should be returned in its favor, unless the jury should find that some agent of the company, with knowledge of the litigation involving the property, waived the terms and stipulations of the policy. We must assume that there was ample evidence before the jury to establish a waiver, and if there was, the policy was not invalidated by reason of the foreclosure proceedings.

Another breach of the policy is relied upon by the defendant below. The property was sold about two weeks prior to the fire by the sheriff of Douglas county to the Merchants National Bank of New York in a suit brought by such bank against the Omaha Carriage & Sleigh Company. This sale, it is urged, was a violation of at least three conditions of the policy, stated in the brief as follows: "(1) Proceedings working change in the title to the insured premises by legal process; (2) because by and under these proceedings the title to the insured premises became involved in litigation; (3) because the property had been levied upon and had been taken into custody of the sheriff under his writ of attachment,—the provisions of the policy referred to being as follows: If the property thereby covered shall be levied upon or taken into possession or custody under any proceeding at law or in equity." The trial judge instructed the jury upon this point, at the request of the insurance company, in the following language:

"9. It appears by uncontradicted evidence that upon September 8, 1888, the Merchants National Bank of Syracuse, New York, commenced a suit against the Omaha Carriage & Sleigh Company to attach the insured premises; that this attachment was sustained, and that an order of sale was issued directing the sheriff to sell said insured premises, and upon April 10, 1889, the insured premises were exposed for sale and bid in upon such sale by the plaintiff, the Merchants National Bank of Syracuse, New York. You are instructed that the proceedings in said action involved the title to the insured premises in litigation and was a violation of the terms of the policy, which made it void. And unless you find that some agent or agents of the insurance company had knowledge of such proceedings and with such knowledge waived said condition of the policy, you must find for the defendant."

The jury undoubtedly found that the defendant, with the knowledge of the facts, waived the condition of the policy, and we decline to weigh the evidence to ascertain if it sustains such finding, since the instruction quoted, given at the request of the insurance company, submitted to the jury the question of waiver of the terms of the policy.

The policy contained a stipulation to the effect that it should be void if any change should occur in the possession of the property. It is insisted that this provision of the policy has been violated. At the time the insurance was written the sheriff had possession of the property under and by virtue of a certain writ of attachment, and so retained possession until January, 1889, when, under a replevin writ served upon him by the coroner for the personal property, the sheriff delivered possession of the chattels and building to the coroner. The chattels were subsequently sold under a chattel mortgage to B. B. Wood, who took possession thereof and of the insured premises, and so retained possession until the time of the fire. There is contained in the bill of exceptions am-

ple evidence to show that Murphy & Lovett, the agents who wrote the policy, had actual knowledge of the changes in possession of the premises, and with such knowledge did not cancel the policy, but waived the conditions thereof.

Complaint is made of the giving of paragraphs Nos. 1, 3, 4, 5, 7, and 8 of the court's charge to the jury. The instructions cannot be considered for two reasons: The exception to the instructions taken by the defendant in the trial court was too general, being in the language following: "Now comes the defendant, and excepts to the giving by the court to the jury on its own motion of the following instructions, to-wit: Instruction No. one (1); instruction No. two (2); instruction No. three (3); instruction No. four (4); instruction No. five and one-half; instruction No. six (6); instruction No. seven (7); instruction No. eight (8)." The exception is not sufficiently specific, and is insufficient. (*McReady v. Rogers*, 1 Neb. 124; *Hedrick v. Strauss*, 42 Neb. 486; *Brooks v. Dutcher*, 22 Neb. 644; *Omaha Fire Ins. Co. v. Dierks*, 43 Neb. 473; *Redman v. Voss*, 46 Neb. 512; *Blue Valley Lumber Co. v. Smith*, 48 Neb. 293; *Union P. R. Co. v. Montgomery*, 49 Neb. 429.) Again, the instructions were grouped in a single assignment in the motion for a new trial. So that, as the attention of the trial court was not properly called to the instructions in the motion for a new trial, they cannot be reviewed here. (*Hiatt v. Kinkaid*, 40 Neb. 188; *Rea v. Bishop*, 41 Neb. 202; *Hedrick v. Strauss*, 42 Neb. 485; *Diers v. Mallon*, 46 Neb. 132; *Kauffmann v. Cooper*, 46 Neb. 644; *McCormal v. Redden*, 46 Neb. 777; *Union P. R. Co. v. Montgomery*, 49 Neb. 429.)

The point is made that plaintiffs were not entitled to a joint verdict and judgment. It is a familiar doctrine that two persons are not entitled to recover jointly upon a demand due one of them alone. The amount of the policy was $1,750, and the loss thereunder was, by its terms, payable to John Wendell as his interest should appear. He held a mortgage on the insured premises

for the sum of $5,000, besides interest. The proofs disclose that this mortgage remains unpaid, and that there was due thereon at the trial the sum of $5,907.76. While both plaintiffs were entitled to join in bringing the action, as both were interested in a recovery and were entitled to have their several interests adjudicated in the same action, under the evidence adduced there could not properly be a joint recovery. The entire amount of the loss was, by the terms of the policy, due and payable to John Wendell, the mortgagee, and the verdict and judgment should have been in his favor alone. But the judgment should not be reversed for this error. As the defendant was not in the least prejudiced by the return of a joint verdict in favor of both plaintiffs, no recovery could afterwards be had by either of the plaintiffs upon the same cause of action. The error was not prejudicial to rights of the insurance company. (*Culbertson Irrigating & Water Power Co. v. Wildman*, 45 Neb. 663; *Houck v. Linn*, 48 Neb. 227; *Louisville, N. A. & C. R. Co. v. Lange*, 41 N. E. Rep. [Ind.] 609.)

Error is assigned because the court below declined to submit to the jury certain requests for special findings submitted by the defendant. Interrogatories for special findings may be submitted to the jury or refused in the discretion of the trial court, and where there has been no abuse of discretion in that regard, the ruling will not be molested. (*Floaten v. Ferrell*, 24 Neb. 353; *Atchison, T. & S. F. R. Co. v. Lawler*, 40 Neb. 356; *Hedrick v. Strauss*, 42 Neb. 485; *Reed v. McRill*, 41 Neb. 206.) The defendant was not prejudiced by the refusal to give to the jury the requests for special findings.

It is finally insisted that the court erred in rendering judgment against the defendant for $200 attorney's fees, since the policy was issued prior to the enactment of the statute authorizing the taxation of an attorney's fee in actions upon fire insurance policies. It is argued by counsel for plaintiff that this point cannot be considered, for the reason the defendant filed no motion in the court

below to retax the costs in this case. This latter doctrine was repudiated in *Hartford Fire Ins. Co. v. Corey*, 53 Neb. 209, 73 N. W. Rep. 674, where it was said: "In actions like the present one, the statute makes it the duty of the court, and not the clerk, to determine the amount of attorney's fees which shall be paid by the insurer to the insured. The clerk is the mere arm of the court, and could not, of his own accord, allow an attorney's fee in the case. It required judicial action. The court below has spoken. It awarded an attorney's fee to plaintiffs, and determined the amount thereof, and, to review its decision upon the question, no motion to retax was necessary." The fact that this policy in suit was issued before the act was adopted allowing attorney's fees in actions like the present is immaterial. The statute in question authorizing the recovery of such fees applies to all policies whether written before or subsequent to the time the act became operative. This was expressly held in *Hanover Fire Ins. Co. v. Gustin*, 40 Neb. 828. There is no reversible error in the record, and the judgment is

AFFIRMED.

IRVINE, C., not sitting.