LOUIS RAAPKE ET AL., APPELLANTS, V. JAMES E. BEACOM
ET AL., APPELLEES.

FILED DECEMBER 24, 1913.    No. 17,518.

Fraudulent Conveyances: BONA FIDE PURCHASERS. If the vendor of property intends by the sale to hinder or delay his creditors, the purchaser will not be protected as a purchaser in good faith as to the purchase price not paid or placed beyond his control prior to his notice of the intended fraud.

APPEAL from the district court for Dakota county: GUY T. GRAVES, JUDGE. *Reversed with instructions.*

*McGilton, Gaines & Smith,* for appellants.

*Alfred Pizey* and *Sullivan & Griffin, contra.*

SEDGWICK, J.

The plaintiffs recovered judgments against the defendant James E. Beacom, and, executions having been returned thereon unsatisfied, they began this action in the district court for Dakota county to subject a tract of land in that county to the lien of their judgments. John P. Beacom, brother of James E. Beacom, was made a defendant in the action, and it was alleged that the defendant James E. Beacom had transferred the title of the land to the defendant John P. Beacom in fraud of his creditors. The defendants answered, admitting the judgments and the transfer, and alleged that the sale of the land to the defendant John P. Beacom was in good faith and without intent to defraud creditors. The trial court found the issues in favor of the defendants, and the plaintiffs have appealed.

It appears that James and another brother, Owen, were engaged in the grocery business in Omaha, and John resided in Dakota county and was not interested in that business. James bought goods of these plaintiffs in the spring and summer of 1910, for which he was indebted to the plaintiffs, and upon which said judgments were obtained. In May of that year he executed a deed to John conveying the land in question, but the deed was not recorded, and was afterwards surrendered for cancelation and a new deed executed in lieu thereof. The consideration recited in the first deed was $7,000, and in the second the specified consideration was $6,400. John testified upon the trial that the true consideration was $5,500. John had been in possession of the land for some years, and continued in possession during the time involved in these transactions. He also testified that, upon the making of the first deed in May, he paid $500 in cash thereon; that there was a mortgage of $1,900 then upon the property, and that the remaining $3,100 was to be paid by the giving of his notes to his brother James and his brother Owen, who was formerly in partnership with James, as above stated. In

pursuance of this agreement, he did, shortly before he was testifying, and a long time after this action was begun, execute and deliver to his brother Owen a note for $1,500, payable in 1910, and to his brother James his note for $1,600, payable May 2, 1920.

Various questions are discussed in the briefs, such as the good faith or want thereof on the part of the defendant John in buying the land; the effect of withholding his deed from record; and whether, if both parties acted in good faith in making the sale and purchase, the defendant John would be protected in making final payment after he had notice that the result would be to defraud the creditors of his grantor. We do not find it necessary to discuss these questions, since we think that this evidence shows that James intended to hinder and delay his creditors when he made the first deed. He was then purchasing goods of these plaintiffs from time to time, for some of which he was indebted when he made the deed to his brother, and intended to, and did, continue such purchases. In the meantime, as a means of obtaining credit, he represented to the plaintiffs and others that he still owned this land and that its value was such as to make his credit good. On these representations he incurred further liabilities to these plaintiffs, which he finds now that he is unable to pay, and, if this transaction is carried out as intended, will not be able to pay for many years. He was not a witness in the case, and there is no direct evidence that he acted in good faith. There are other circumstances in the record indicating bad faith on his part, and, under this evidence, it must be found that he intended to hinder and delay his creditors.

In *Hedrick v. Strauss, Uhlman & Guthman*, 42 Neb. 485, it is held: "In order to constitute one an innocent purchaser of property sold for the purpose of defrauding the creditors of the vendor, the whole consideration must be actually paid before the purchaser had notice of the fraudulent intent. If, after part of the consideration has been paid, the purchaser receives notice of the fraud, he will

only be entitled to protection to the extent of the consideration paid, or parted with, before notice. As to the purchase price not paid, such vendee will not be regarded as an innocent purchaser of the property."

This is declared to be the law by this court in other cases. The defendants concede that this rule of law would be applicable in this case, unless both parties to the transaction acted in good faith, and upon this feature of the case rest their defense upon the proposition that James acted in good faith in the sale of this land. As we are compelled from the evidence to find otherwise, the judgment of the district court is reversed and the cause is remanded, with instructions to enter a decree that the said deed is void as to the said $3,100 remaining unpaid, and that the land be sold to satisfy the plaintiff's judgments after satisfying prior liens or charges upon the land.

REVERSED.

LETTON, FAWCETT, and HAMER, JJ., not sitting.