CATHERINE MEIGHEN v. WILLIAM E. CHANDLER, Substituted for Josephine Chandler, Deceased, and D. F. Chandler.

(126 N. W. 992.)

**Husband and Wife — Fraudulent Conveyance — Claim of Wife — Evidence.**
   1. Where the contest is between the husband's creditors and the wife over property which the wife claims, but which there are probable grounds for be-

Note.—Since the marital relation affords a convenient cover to protect the property of a debtor from his creditors, courts scrutinize closely transfers from a husband to a wife when they come in conflict with the claims of creditors.  There are several diametrically opposed rules as to the effect of the relationship of husband and wife between the parties to an alleged fraudulent transfer, as shown by a review of all the authorities in a note in 56 L.R.A. 817, on the question of burden of proof of husband's debt to wife on account of property received from her.  The courts of a number of states have adopted the rule that fraud in a conveyance or transfer from husband to wife will not be presumed, but must be affirmatively established by him who alleges it.  But a large majority of the cases hold that, as

lieving belongs to the husband, it is incumbent on the wife to show by satisfactory evidence that she purchased and paid for the property from her separate estate.

**Same — Evidence.**

2. Evidence reviewed, and *held* to establish that the conveyances in the case at bar were fraudulent as to plaintiff.

Opinion filed May 19, 1910.

Appeal from District Court, McLean county; *Hon. W. H. Winchester, J.*

Action by Catherine Meighen against William E. Chandler, substituted for Josephine Chandler and D. F. Chandler.

From a judgment in favor of the defendants, plaintiff appeals.

Reversed.

*Wells & Hopp* and *Newton & Dullam,* for appellant.

As between the husband's creditors and the wife, contesting over property claimed by her and with probable grounds to believe it his, the wife must show by satisfactory evidence that she owns it. Smith v. Tosini, 1 S. D. 632, 48 N. W. 299.; Horton v. Dewey, 53 Wis. 410, 10 N. W. 599; Gettelmann v. Gitz, 78 Wis. 439, 47 N. W. 660; 20 Cyc. Law & Proc. p. 396 and cases cited; Minneapolis Stock-Yards & Packing Co. v. Halonen, 56 Minn. 469, 57 N. W. 1135; Stevens v. Carson, 30 Neb. 544, 9 L.R.A. 523, 46 N. W. 655; Leonard v. Green, 34 Minn. 137, 24 N. W. 915; Shea v. Hynes, 89 Minn. 423, 95 N. W. 214.

*Henry M. Lamberton* and *Hyland & Nuesle,* for respondents.

The presumption is against a wife's gift of her principal property to her husband, and he who asserts it must prove it. Stickney v. Stickney, 131 U. S. 227, 33 L. ed. 136, 9 Sup. Ct. Rep. 677; Grabill v.

between the rights of a wife and creditors of her husband, with respect to property transferred from the husband to the wife, there is a presumption against her, and, as stated in MEIGHEN v. CHANDLER, there must be clear and satisfactory proof of her claim against her husband.

The question when creditors may avoid conveyances from a husband to a wife is also treated in a note in 90 Am. St. Rep. 497. And the validity of a gift of a husband's services to his wife as against creditors is the subject of a note in 21 L.R.A. 623.

The effect generally of a conveyance from a husband to a wife is considered in notes in 69 L.R.A. 353, 88 Am. Dec. 54, and 99 Am. Dec. 599.

Moyer, 45 Pa. 533; Sykes v. City Sav. Bank, 115 Mich. 321, 69 Am. St. Rep. 562, 73 N. W. 369; Hauer's Estate, 140 Pa. 420, 23 Am. St. Rep. 245, 21 Atl. 445; Cole v. Lee, 45 N. J. Eq. 779, 18 Atl. 856; Chadbourn v. Williams, 45 Minn. 294, 47 N. W. 812.

Whether property is in the husband or wife is determined by a preponderance of evidence as in other cases. Chadbourn v. Williams, 45 Minn. 297, 47 N. W. 812; Stickney v. Stickney, supra; Laib v. Brandenburg, 34 Minn. 369, 25 N. W. 803; Bergey's Appeal, 60 Pa. 408, 100 Am. Dec. 578.

CARMODY, J.   On July 18th, 1898, defendant D. F. Chandler executed his promissory note to William M. Meighen, payable on or before two years after date, for $2,458.40, with interest at 7 per cent per annum.   Meighen, who was the husband of appellant, died before the maturity of said note, which was transferred to appellant.   Defendant Josephine Chandler was the wife of D. F. Chandler and sister of appellant.   On the 18th day of February, 1905, action was commenced to recover on said note.   On the 9th day of May, 1906, defendant D. F. Chandler stipulated to allow judgment to be entered against him for the sum of $3,837.89, which judgment was docketed in Winona county, Minnesota.   Execution was issued thereon and returned wholly unsatisfied, and that said judgment has not been paid.   It is to recover the amount due on this judgment that this action, which was commenced February 18, 1907, was brought.   Defendants appeared in said action and served separate answers.   Judgment on the pleadings was ordered in favor of the plaintiff and against D. F. Chandler, for the sum of $4,196.05.   Besides the recovery of this judgment against D. F. Chandler, the object of this action was to adjudge that certain lands situate in the county of McLean, of which the defendant Josephine Chandler held the record title,—to wit, the west one half of section thirteen (13), township one hundred forty-four (144), range eighty-one (81), and all of section one (1), township one hundred forty-five (145), range eighty-four (84); and the east one-half of section thirty-five (35), township one hundred forty-six (146), range eighty-four (84),—to be held in trust for the said defendant D. F. Chandler, and that the judgment recovered against him be adjudged

a lien against said real estate, and for such other and further relief as to the court should seem just and equitable. Defendant Josephine Chandler died on January 20, 1908, leaving surviving her, her husband, D. F. Chandler, two sons, Wm. E. Chandler and George A. B. Chandler, and one grandchild. On the 5th day of August, 1907, during the pendency of this action, defendants Josephine and D. F. Chandler by deed of warranty, conveyed to Wm. E. Chandler all the real estate above described, which deed at the time of the trial of this action had not been placed on record. No consideration was paid for said deed. It was stipulated that Wm. E. Chandler should be substituted for Josephine Chandler as the real party in interest. This action was tried to the court without a jury, and resulted in a judgment in favor of William E. Chandler, from which judgment plaintiff appeals, and specifies that she desires a review of the entire case in this court.

August 24, 1903, D. F. Chandler, Josephine Chandler, Wm. E. Chandler, and George A. B. Chandler executed articles of incorporation of the D. F. Chandler Milling Company, capitalized at $25,000, divided into 250 shares of $100 each, fully paid up. On the same day the same parties, who were the officers and directors of said corporation, executed a certificate of shareholders, the object of which was to publish to the world the names of the shareholders and the amount held by each. It was therein certified under oath of all the Chandlers above named, that they owned all the stock of said corporation as follows: D. F. Chandler, 247 shares; Josephine, William, and George, each one share. This certificate was sworn to before a notary public, and recorded in the office of the register of deeds in and for Winona county, Minnesota. The property of the corporation consisted of a flouring mill and appurtenances in the city of St. Charles, in said Winona county. Thereafter, on the 11th day of August, 1905, an agreement was made with the Traverse Land Company to exchange the property of the milling company for the land in controversy, and 160 acres in Burleigh county, North Dakota, and 160 acres in McLean county, North Dakota, 1600 acres in all. On the 5th day of September, 1905, the Traverse Land Company executed a warranty deed, conveying said land to Josephine Chandler. Respondent attempts to uphold the conveyance to Josephine, upon the theory that she was in fact the owner of all property of the milling company, and bases his conten-

20 N. D.—16.

tion as follows: That as heir-at-law of James Riddle, her grandfather, Josephine inherited the sum of $366.98, most of which she deposited in a bank in Minneapolis, Minnesota. This money was paid her between April 1, 1880, and November 18, 1889. On December 12, 1886, she inherited from her father an undivided one-twelfth interest in 80 acres of land in Pembina County, Dakota territory, now state of North Dakota, and that she subsequently purchased the other interests with the money she inherited from her grandfather. On July 11, 1890, she borrowed $1,000 from Wm. M. Meighen, the payment of which she secured by mortgage on the 80 acres in Pembina county. She afterwards sold that land for the sum of $1,000, and repaid the mortgage. She claims to have on or about July 11, 1890, invested the $1,000 in the Osakis Milling Company. The incorporators in the Osakis Milling Company were D. F. Chandler, Josephine Chandler, George Tileston, and Anna F. Tileston, wife of George Tileston. The stock was divided into 200 shares, the par value of which does not appear in the evidence. D. F. Chandler testified that the whole amount invested in the Milling Company was $5,000, of which he was to have one half and Tileston one half. He and Tileston each took 99 shares, and their wives had one share each. It is contended by respondent that there was an oral understanding between D. F. Chandler and Josephine, that she should receive whatever the $1,000 represented in the capital and earnings. There is no evidence to show where the Chandlers got the other $1,500, which D. F. Chandler claims they invested in the milling company, except that William Meighen, son of appellant, testified that the note on which the judgment in Winona county, Minnesota, was obtained, started with $1,500, loaned by Wm. M. Meighen, father of the witness, to D. F. Chandler. The Chandlers remained with the Osakis Milling Company until March 13, 1895, when they sold their interest therein to the Tilestons for $4,887.28, which sum the Chandlers claim was paid to Josephine as follows: $887.28 in cash, and the balance in four promissory notes of $1,000 each, given to Josephine. These notes were discounted, and the money received by D. F. Chandler, acting as the alleged agent of his wife. The respondent claims that Josephine Chandler loaned to her husband, D. F. Chandler, the sum of $4,887.28, which he agreed to repay with 8 per cent interest. No notes or any evidence of such indebtedness was

given, and the evidence does not show that any time was fixed for the repayment of the same. Defendant D. F. Chandler claimed that this money was used in the support of his family, and in losses by speculation in wheat. In October, 1899, D. F. Chandler engaged himself with King Brothers Lanesboro Milling Company as manager of their mill at a salary of $75 per month, payable in advance, and one fourth of the net profits. This contract was oral and was reduced to writing August 29, 1900. On July 14, 1900, there was also signed the following:

We hereby agree to pay to Josephine Chandler all profits as per agreement made with D. F. Chandler, in connection with his services with the Lanesboro Milling Company, excepting $465, which has already been paid.

The Lanesboro Milling Company,
L. A. King.

Chandler remained with the Lanesboro Milling Company until about July 7th, 1903. It is claimed by respondent that the Lanesboro Milling Company paid Josephine Chandler the sum of $5,500, and that this money Josephine invested in the D. F. Chandler Milling Company and was used in purchasing and refitting the mill. D. F. Chandler was an expert miller and manager. The Chandlers were engaged in no business during the time from March, 1895, until October, 1899; lived from the money received from the Tilestons by the sale of their interest in the Osakis Milling Company. The money for the support of the Chandler family, as well as what he put in the D. F. Chandler Milling Company, was earned by the skill and industry of D. F. Chandler while with the Lanesboro Milling Company. D. F. Chandler and Josephine both claimed that the 247 shares of stock in the D. F. Chandler Milling Company was placed in the name of D. F. Chandler (he being well known in the milling business) so as to give the concern credit. They also claimed that the 247 shares were transferred from him to her on the 3d day of December, 1904, but the evidence conclusively shows that the transfer was actually made on the 7th day of April, 1905, during the pendency of the action, on which the judgment sued on in the case at bar was recovered by appellant

against D. F. Chandler. They gave as a reason why the shares were not actually transferred on December 3, 1904, that they were up as collateral security in a bank in St. Charles, Minnesota. Wm. E. Chandler, who was twenty-five years old on the 6th day of January, 1905, testified that he was in Platteville, Wisconsin, and his mother sent him the deed of the land, hereinbefore mentioned. He received the deed on the 14th day of August, 1907. The consideration in the deed was placed at $20,000. Never paid any consideration. Sole consideration love and affection. Made no provision for any other member of the family. Never paid any taxes on the land. Did not know whether they were paid or not. Mr. Lamberton, attorney for the Chandlers, had been taking care of it. Never left any money with Mr. Lamberton. Neither Josephine nor Wm. E. Chandler saw the land in question.

Thus it will be seen that, as far as the public was concerned, D. F. Chandler was solvent from July, 1890, until March, 1895, the entire time he was connected with the Osakis Milling Company. Also from the time of the organization of the D. F. Chandler Milling Company, in August, 1903, until April 7, 1905, but by a secret understanding between himself and his wife, he was wholly insolvent. The testimony of Josephine Chandler was taken by deposition at a time when she was sick. Most of the questions were read to her from a typewritten memorandum, and her answers were also given by her reading from a typewritten memorandum. She did not seem to be positive, except as to the fact that she loaned the $4,887.28 to defendant, D. F. Chandler. There was no time stated when it was to be repaid. The testimony shows that during all the time herein mentioned D. F. Chandler transacted all the business, used and handled the money and the property as if it was his own, signed receipts, signed checks, drew the money from the Lanesboro Milling Company when he wished, sometimes overdrew his salary account for living expenses. He paid part, if not all, of the expenses of this law suit. Said he did it at the request of his boy. O. C. Neuman, president of the Traverse Land Company, testified that he made all arrangements for the exchange of the land with D. F. Chandler, at no time represented that he was acting as the agent of any person. Neuman further testified that when the deed was executed no grantee was named therein. He took the

deed to St. Charles, Minnesota, for the purpose of closing the deal, but Chandler suggested that he be permitted to take the deed to his attorney, Henry M. Lamberton, of Winona, for the purpose of examination only. This was the last Neuman saw of the deed. If this testimony be true, the name of Josephine Chandler was inserted in the deed as grantee after it was given to D. F. Chandler for the purpose of having it examined by his attorney. O. L. King testified that he never had any business relations with Josephine Chandler. That defendant D. F. Chandler told him that he, D. F. Chandler, wanted his share of the profits in the mill turned over to his wife on account of the indebtedness he owed Meighen, and that that is why the notes for part of the profits were executed to Josephine Chandler, and the agreement made to pay her the profits.

L. A. King, the active manager of the mill, testified to practically the same thing. It is true that this testimony is contradicted by D. F. Chandler, and that Mrs. Chandler testified that the agreement to pay her the money was made at her house. In regard to the writing by which the Lanesboro Milling Company agreed to pay to Josephine Chandler a share of the profits in the milling company, she testified, from a memorandum, as follows: "L. A. King then and there wrote out and handed to me this piece of paper in the presence of my husband, D. F. Chandler, William E. Chandler and Geo. A. B. Chandler, my sons." In regard to the matter, D. F. Chandler testified as follows: "On the 14th day of July he (meaning King) brought that paper and delivered it to Josephine Chandler in the presence of myself, Wm. E. Chandler, and Geo. A. B. Chandler."

The testimony of Geo. A. B. Chandler and William E. Chandler on this point is vague and unsatisfactory.

Josephine Chandler testified that she did not know as she could give a reason why the 247 shares of stock held by D. F. Chandler in the D. F. Chandler Milling Company were transferred to her. They talked it over and planned it that way. That is, the two boys, D. F. Chandler and herself, when they went into the St. Charles mill.

It will be observed that while they purchased the St. Charles mill for $2,500, and put $3,000 more in for repairs, they capitalized it at $25,000, all paid up, of which D. F. Chandler owned 247 shares, showing to the public that he was worth the sum of $24,700. But even

if Josephine Chandler had loaned the money to her husband, as testified to by her, the law will not permit them to use it successfully as a shield, merely in the perpetration of a fraud upon the creditors of her husband. Wake v. Griffin, 9 Neb. 47, 2 N. W. 461.

Where the contest is between the husband's creditors and the wife, over property which the wife claims, but which there are probable grounds for believing belongs to the husband, it is incumbent on the wife to show by satisfactory evidence that she purchased and paid for the property from her separate estate. Gettelmann v. Gitz, 78 Wis. 439, 47 N. W. 660; Horton v. Dewey, 53 Wis. 410, 10 N. W. 599; Smith v. Tosini, 1 S. D. 632, 48 N. W. 299.

Clear and satisfactory proof of a wife's claim against her husband is exacted where the wife asserts that he transferred property to her in payment thereof. Note in 56 L.R.A. 830, and cases cited; Le Saulnier v. Krueger, 85 Wis. 214, 54 N. W. 774; Minneapolis Stock-Yards & Packing Co. v. Halonen, 56 Minn. 469, 57 N. W. 1135.

During the entire time that defendant D. F. Chandler was in business at Osakis and St. Charles, with the exception of the last few months at St. Charles, from April, 1905, until August, 1905, public records showed that he was a man of property and solvent. While she may have invested some money in the Osakis Milling Company, and afterwards loaned the proceeds of her interest therein to her husband, and while there may have been some understanding between them that he would repay her, yet we do not think it was such a definite understanding or agreement as should, under the circumstances, be held to be a contract between husband and wife, as against the creditors of the former. Clark v. Rosenkrans, 31 N. J. Eq. 665; Frank v. King, 121 Ill. 250, 12 N. E. 720; Hanson v. Manley, 72 Iowa, 48, 33 N. W. 357; Wake v. Griffin, 9 Neb. 47, 2 N. W. 461.

The circumstances point conclusively to the fact that the property was transferred to Josephine Chandler for the purpose of placing it beyond the reach of her husband's creditors and was transferred by her to defendant Wm. E. Chandler for the same purpose. No other conclusion can be reached from a review of the whole of the evidence. The deeds were therefore fraudulent so far as plaintiff's judgment was concerned.

The judgment appealed from is reversed, and the District Court is directed to enter judgment for the plaintiff for the relief prayed for in her complaint. All concur.