[File No. 5966.]

ARTHUR BUCHOLZ et al., Respondents, v. HERMAN HART-
HUN, Appellant.

(239 N. W. 161.)

Opinion filed November 12, 1931.

*Lemke & Weaver,* for appellant.

548

*Charles G. Bangert,* for respondent.

BURKE, J. This is an appeal from an order overruling a motion to vacate a judgment. The first question arises on a motion to dismiss the appeal on the ground that the statement of the case was not settled in the time prescribed by statute. The statute does not fix any specified time in which the statement of the case must be settled. Section 7655 provides that: "within thirty days after the notice of the entry of judgment or the order to be reviewed, or such further time as the court shall allow. . . ." In other words, the statute fixes thirty days and then provides such other time as the court may allow, leaving it entirely in the discretion of the court, and the discretion of the court is emphasized in § 7666, Comp. Laws 1913. The record shows in the instant case that the time was extended on affidavits and without notice to the respondents and it is the contention of the respondents that such extensions are void because made without notice to them. The statute

does not require that notice of an application for an extension of time shall be served upon the other party. The orders may be made ex parte. Johnson v. Northern P. R. Co. 1 N. D. 354, 48 N. W. 227. Besides, on the 16th day of June, 1931, the attorneys for appellant and respondents stipulated in writing "that the hearing on the Motion to Settle the Statement of the Case shall be heard at Valley City, North Dakota, and same is to be taken up at a time to suit the convenience of the court as soon as possible after June 20th, the day set for hearing said Motion. . . ." In accordance with this stipulation and the affidavit of one of the attorneys for appellant, the court ordered a further stay of all proceedings "until the Statement of the Case is actually settled in accordance with said Stipulation." The statement of the case was settled on June 24th which was apparently at the earliest convenience of the court and in accordance with the stipulation.

It is the contention also of respondents that the briefs were not filed in time. The briefs were filed before the opening of the term of court at which the case was to be argued and since the filing of the briefs is not jurisdictional and was in no way prejudicial to respondents the motion to dismiss is overruled. The verified answer states a good defense and an affidavit of merits was not necessary. Jesse French & Sons Piano Co. v. Getts, 49 N. D. 577, 192 N. W. 765; Peterson v. Finnegan, 45 N. D. 101, 176 N. W. 734; Harris v. Hessin, 32 N. D. 25, 155 N. W. 41.

The action is one to quiet title to a quarter section of land in Barnes county. Appellant's answer alleges that he is the owner of said land under a warranty deed from Amelia Bucholz, who claims title to said land under a patent from the United States. At the time of the institution of said action, Hugo Remington, of Lisbon, North Dakota, represented the appellant and when the case came on for trial on the 10th day of July, 1930, the defendant appeared in court in person and at the opening of the trial insisted that he had discharged his attorney, Hugo P. Remington. The court was adjourned until two o'clock in the afternoon to give the defendant an opportunity to employ counsel. When court convened at two o'clock there was a note for the trial judge reading as follows:

"to the Honorable Yurch. Please Ex Youse me, as I kan not gid a Yawyer. So I made up my Min to go Home. to Stay away from Robber and Thifs, and Make me Mor Sick.  . .

"H. E. Harthun

Pleas Ex Yuse me.—"

The court proceeded with the trial and judgment was taken against the defendant by default.

On the 19th day of December, 1930, on a petition of Fred Underwood, Honorable A. T. Cole, one of the judges of the district court of Barnes county, appointed the said Fred Underwood, guardian ad litem for the defendant to represent him in said action, and on the 26th day of January, 1931, the motion to vacate the judgment was denied. The motion was based upon many affidavits and exhibits "A" and "B" which were introduced in respondents evidence at the time of the trial on July 10, 1930. Exhibit "A" has already been quoted and Exhibit "B," a letter addressed to the Clerk of the Court by the defendant reads as follows:

"Enderlin N. Dak. 25 1930

"to the Clerk of the District Court at Waly City N. Dak.

Dear Sir:

"Yours from 23 on hand and notis that there will by a Trial Case of Enton Bucholz et al vs Herman E. Harthun has been set for trial Thursday July 10th at 10 o'clock. Yes Mr. Hugo Remington kan not act as my atorny anny more—as he is the man that poisoned me the last Part of May—him and the Banker had it fin fixt. the Law givin me Slow Poison. that akts on my harth and Brains. and the god me under Lawers Cores-porancy. so that I Kan not gid any Lawer— but if the Lord will giv me Halt and strangt. I will aper for my owen Self-defens.—I am a wirry Sick man. I am Harthbroken. Suffer from Broken Down Nervs. Hy Blod Presher.—and Poisn.—my blod in my harth is pounning from that poisen—and it stops the Circulagen to the fin Blod Wains. to the Brain Circolagen—and I am allwis Disy and Somethim Unconchis so that my mind is a Dark Blank, buth I will by ther god will by with me —and will defend myself aginst the robers, murders and thifs—the ar Hungrin and Hungring for My

Flesh and my Blod—to Kill me—and then rob me fo all I god—Pleas hand this Letter to the Honnorable Judge

> "I am Your Truly
> "Page 3

"Herman E. Harthun

"I hav a honist Deed—and the Deed is Honist recorted—and Banker, Hugo Remington and Fred Oehlke, the how Robd me of all my last yer crop, and sohld it—and did not let me hav a won cent to Live at so I was first to Sell that Land to Emil H. Gotzberg at Cinsinatio. to save my Existans and from Starvagen. My Dear Wive giv me the Deet in the first Schee was Geten out of her Swet Home. 2d shee had Morkech on the Land. I Paid 600 Dolar and 5 Dolars her MorKich and I also nurch her and Paid the Taxses for 10 yeers—and I giv her a Nice home and Suport her the rest of her Live. I god the Deet for—
> "over

"So I make a move to the Honnorably Jurch to dismis the Case god by with You. . . . . . . . .
the made Spirit will try all in his power to Woist it a way from me buth the True Loving God will bee wit me so that Satan Kan not Do me anny Harm. the 3 ston Walls will by Broken up wer the god me in —and I will Com out in Glory to the Lord—Juge Engellert he Knos All about this Case—so the Changs it to an oder to Honorable Judge Weenson. thank you—Pleas by good to me—the Lord will Reward you for it. Amen

> "Herman E. Harthun"

O. M. Anderson made affidavit stating that in 1930 Mr. Harthun told him that he had been dead for three or four days, but that none of his neighbors had come around to see him; that Mr. Remington of Lisbon had poisoned him and his heart was bad; that his person was all broken out as a result of such poisoning; that the personal conduct, talk and actions of Mr. Harthun were strange, unusual and unreasonable. The chief of police of Enderlin stated that "Mr. Harthun stated that his attorney, Mr. Remington, had given him some poison and that he (Mr. Harthun), was dying a slow death." Peter Hill, county commissioner, made affidavit that he knew defendant for eight years. He (Harthun) called on affiant at one time when affiant was

sick and told affiant how he lay unconscious; that he was some holy light of Jesus, or some other holy thing, and claimed that he had been dead and thereafter resurrected. He stated that he had been at one time confined in an asylum for the insane in the state of Minnesota. He also told affiant that Mr. Remington had poisoned him and that they had him "between three robbers," Mr. Remington, Mr. Charles G. Bangert and Fred Oehlke; that the judge, sheriff, attorneys, were robbers and murderers and had robbed him and stolen from his fruit juice; that the defendant was tried at Lisbon for a violation of the prohibition law; that during the trial he took off one shoe and stocking and from a small grip he took a bottle; took a drink and then began to rub the contents of the bottle upon his foot, until he was stopped by the sheriff. Mrs. Herman Oehlke made affidavit that he (Harthun) would dress up in military uniform, blacken his beard and hair, and parade up and down the sidewalk in front of her home like a peacock; that she had known him for ten years and observed his actions and formed the opinion that he was crazy, insane and mentally incompetent. There is an affidavit from the sheriff of Ransom county describing the scene in the court room in which the defendant took off his shoe and stocking, took a drink out of a bottle and then rubbed the contents on his feet. He states further that while confined in jail he continually talked about great rain storms and floods to come, and that God would punish him, the court and all others participating in his being placed in jail; that he would sit and cry—cry for hours at a time; that he repeatedly asked permission to see the judge but his conduct was so extreme that the judge told affiant to keep him in jail and away from him; that the acts and sayings of Mr. Harthun were so strange and unusual that this affiant has no hesitancy in expressing his opinion that during all the time mentioned Mr. Harthun "has been and still is incompetent to attend to business affairs in a normal and usual manner." There are other affidavits to the same effect and stating other unusual and extraordinary actions upon the part of the defendant, none of which are denied. There are affidavits in opposition made by the plaintiffs and interested parties which in effect state that the defendant is competent to take care of his business.

It is also claimed that the judge who appointed the guardian had no

jurisdiction to make the appointment. Section 7401, Comp. Laws 1913 provides that: "when the defendant is a person of unsound mind at the time the action is commenced and no guardian has been appointed of his person or estate, the court or a judge thereof shall appoint a guardian for him for the action." Judge Cole is one of the judges of the Judicial District which includes Barnes county. Counsel does not cite any authority for his statement that the judge did not have jurisdiction to make the appointment and we know of none. The petition was apparently regularly made and we must assume that the showing made to Judge Cole was sufficient to justify the appointment of a guardian. In addition to the affidavits and exhibits it also appears from the record that the defendant was at one time an inmate of an insane asylum at St. Peter, Minnesota. From the record it appears unquestionably that the defendant suffered from delusions and at the time of the trial and his writing of the letter, Exhibit "A," he was sick mentally and physically.

The only question before us is whether or not the judgment should be vacated on the showing made. The trial judge was very liberal in granting extensions of time and in permitting the filing of affidavits, but we think on the showing made that the judgment should have been vacated and the defendant, through his guardian, be permitted to defend the case upon the merits. He could bring an action in equity to have the judgment vacated and set aside but the same thing can be accomplished on motion to vacate the judgment and if the defendant was incompetent at the time of the trial, that certainly was excusable neglect.

The order overruling the motion to vacate the judgment is reversed and the defendant, through his guardian, is permitted to defend on the merits.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE and BURR, JJ., concur.