Lorentine SCHRIOCK, Plaintiff
and Appellant,

v.

William SCHRIOCK, Ruth Schriock, and
Schriock Construction, Inc., Defend-
ants and Respondents.

No. 8064.

Supreme Court of North Dakota.

June 8, 1964.

Ilvedson, Pringle, Herigstad & Meschke, Minot, for plaintiff and appellant.

Waldron & Kenner, Minot, for defendants and respondents.

ERICKSTAD, Judge (On Reassignment).

This is an appeal by the plaintiff, Lorentine Schriock, from a judgment dated July 6, 1961, dismissing the plaintiff's action. A trial de novo is demanded.

The defendants and respondents have moved to dismiss the appeal on the grounds "that the motion for settlement of the case made herein was untimely and not within the period prescribed by statute; that it was not within the time permitted under the two additional periods granted ex parte by the lower court and that the period for such appeal can not be enlarged or extended upon timely objection thereto."

A similar motion to dismiss the appeal was first made in the district court, where the court denied the motion and issued its certificate settling the statement of the case on October 31, 1962.

The district court, acting ex parte, had twice extended the time for securing a settled statement of the case, the last extension being to May 31, 1962, to permit the court reporter time in which to prepare a transcript of the testimony. The transcript was prepared and placed in the hands of the attorneys for the appellant on or about May 14, 1962, but the attorneys for

the appellant failed to secure a further extension of the time to prepare the statement of the case.

No reason was given by the district court in denying the motion to dismiss the appeal, but apparently the court accepted the explanation made by counsel for the appellant that the failure to secure an additional extension of time to prepare the statement of the case was because said counsel "believed that there was an agreement between counsel that the settled Statement of the Case and certifying the record to the Supreme Court, would be held in abeyance until thirty (30) days or so after appellant's brief was prepared and served upon the defendants, in order to give the attorneys for the defendants the benefit of having the complete trial record available in order to prepare their reply brief."

The affidavit of the respondents' attorney denies any such agreement.

The sections of our law pertinent to this problem read as follows:

"28-18-06. Statement of the case.— The record in a case for presentation to the trial court on a motion for a new trial or for judgment notwithstanding the verdict, or to the supreme court on appeal, shall be prepared as follows:

"1. Within thirty days after notice of the entry of judgment or of the order to be reviewed, or within such further time as the court shall allow, the moving party must procure a transcript of the evidence and furnish a copy thereof to the adverse party with a notice that at a time not less than fifteen nor more than thirty days after the service of such notice, he will present the same to the judge for certification as a correct transcript of the evidence and of all proceedings had and made matter of record by the official reporter, and that, at the same time, he will ask the judge for a certificate

identifying the exhibits and depositions in the case;

\* \* \* \* \* \*

"4. When such transcript and other matters are so certified by the judge and filed, they shall become a part of the judgment roll and shall be known as the statement of the case." North Dakota Century Code.

We believe that a decision of this court rendered in 1948 settles this question in favor of the appellant:

" \* \* \* The court is authorized to extend the time within which a statement of case may be settled, RC 1943, Sec. 28-1806. Applications for extension of time for settlement of a statement of case are not jurisdictional and orders extending time of settlement may be made ex parte. Johnson v. Northern Pac. R. Co., 1 N.D. 354, 48 N.W. 227; Bucholz et al. v. Harthun, 61 N.D. 547, 239 N.W. 161. And where a statement of case is settled after the time limited without an extension of time having been granted the order of settlement itself operates to extend the time for settlement. Johnson v. Northern Pac. R. Co., supra. \* \* \*

" \* \* \* Statutes permitting extensions of time for settlement of statement of case or for settlement after the time has expired or for amendment of the statement of case where there are material omissions are remedial in their nature and should be liberally construed to the end that an appeal may be determined on its merits. Smith v. Hoff, 20 N.D. 419, 127 N.W. 1047." Muhlhauser v. Becker, 76 N.D. 402, 37 N.W.2d 352, at 359 and 360.

In Millers' & Traders' State Bank v. National Fire Ins. Co., 55 N.D. 149, 212 N.W. 834, 835, this court, in its syllabus, said:

"An application for settlement of a statement of the case after the time

limited therefor by the statute has expired is addressed to the sound judicial discretion of the trial court, and its ruling will not be disturbed unless the record presented on appeal shows that the trial court abused its discretion. * * *"

■ In construing pertinent sections of the Compiled Laws of the Territory of Dakota, 1887, in Johnson v. Northern Pac. R. Co., 1 N.D. 354, 48 N.W. 227; sections of the Revised Codes of 1905 in Smith v. Hoff, 20 N.D. 419, 127 N.W. 1047; sections of the Compiled Laws of 1913 in Millers' & Traders' State Bank v. National Fire Ins. Co., 55 N.D. 149, 212 N.W. 834, 835; and the present statutes in Mulhauser v. Becker, 76 N.D. 402, 37 N.W.2d 352, this court, in effect, has consistently found that the trial court's ruling on an application for settlement of the case after the statutory time for settlement thereof has expired, will not be disturbed on appeal except for abuse of discretion.

■ We do not find that the trial court abused its discretion in the instant case.

The merits of the appeal will now be considered.

On November 20, 1946, the plaintiff obtained a judgment in the State of Oregon which granted her a divorce from the defendant William Schriock and obligated him to make certain periodic payments to her. This judgment was renewed on September 15, 1956. The plaintiff, in March, 1957, obtained a judgment in North Dakota in the sum of $13,024, for payments due and unpaid on the Oregon judgment. In Schriock v. Schriock, N.D., 95 N.W.2d 577, this judgment was affirmed.

When execution of this judgment was returned unsatisfied, the plaintiff initiated proceedings supplementary to the execution, pursuant to Chapter 28–25 of the North Dakota Century Code.

Subsequent to the proceedings supplementary to the execution, the plaintiff brought an action in July, 1959, alleging, among other things, the existence of the 1957 judgment, that execution on the judgment had been returned unsatisfied, and that no part of the judgment had been paid.

Other allegations were as follows: that the defendant Ruth Schriock holds the registered title to certain trucks, tractors, and construction equipment used in a construction business; that the defendant William Schriock is and has been the real and equitable owner of an interest in said property and that he has received and enjoyed income and profits therefrom; and that said property was purchased and placed in the name of the defendant Ruth Schriock to be held by her for the use and benefit of her husband, William Schriock, for the purpose of defrauding the plaintiff, a creditor since 1947, by preventing the collection of the debt due by him to the plaintiff.

In conclusion, the plaintiff asked for the following relief:

"1. That the court issue its order, forbidding a transfer or other disposition of the trucks, tractors, and equipment until a sufficient opportunity is given to prosecute this action to judgment;

"2. That said trucks, tractors and equipment be decreed by this court to be held by the defendants, Ruth Schriock and Schriock Construction, in trust for the defendant, William Schriock;

"3. That said trucks, tractors and equipment be subject to the payment of plaintiff's judgment hereinabove described, together with interest thereon and the costs of this action;

"4. That the court issue its order appointing a receiver to take charge of said property and apply it on plaintiff's money judgment, together with interest thereon, and the costs of this action."

The answers interposed admit the existence of the judgment and that no part of it has been paid; that titles to the trucks, tractors, and construction equipment were transferred by Ruth Schriock, as owner, to Schriock Construction Company, Inc.; that William Schriock has acted as agent and in a managerial capacity for Ruth Schriock and for the said construction company. They deny all other material allegations of the complaint.

The pertinent parts of the trial court's findings are as follows:

"VI.

"That Ruth S. Schriock, defendant, started in the construction and earth-moving business in Grant County in 1948 or 1949; that she financed the said business with her own money and with capital she borrowed on her own credit; that William Schriock worked for her in the said business, but had no financial interest in it.

"VII.

"That William Schriock has worked for Ruth Schriock since 1949 and has acted as her agent in the transaction of business, has operated her equipment and trucks, and has gratuitously performed services in her behalf ever since she went into the construction business.

"VIII.

"That Ruth Schriock has operated the said business under the names of Ruth S. Schriock, Schriock Construction Company, and Schriock & Sons; that she incorporated said business and now operates it under the name of Schriock Construction, Inc.

"IX.

"That defendant William Schriock has no interest in said business either as a stockholder or otherwise and owns no real or personal property used in or about the business of Schriock Construction, Inc.; and that he has no financial interest in the business of Ruth S. Schriock as by her owned, individually or corporately.

"X.

"That neither Ruth S. Schriock nor the Schriock Construction, Inc. holds title to any property, including trucks, tractors or equipment, to the use and benefit of William Schriock."

On these findings the trial court ordered judgment dismissing the plaintiff's action. The appellant appealed from the judgment and demanded a trial de novo.

In considering the merits of the appeal, it is necessary for us to review the record.

The plaintiff left the defendant William Schriock and Carson, North Dakota, for the West Coast in 1945. In December, 1946, she secured a divorce judgment from the said defendant in the State of Oregon, which judgment provided that he pay her $150.00 monthly.

The defendant William Schriock testified that when the plaintiff left him, he was forced to sell most of his property to secure funds to visit the plaintiff and to provide for her support. On direct testimony he stated that the only property he owned at the time of the divorce and during the interim between the divorce from the plaintiff and marriage to the defendant Ruth Schriock was a 1941 dump truck; but on cross examination he admitted that he also acquired during that period a cleat tractor with front-end loader and shovel, which, he stated, he purchased at a cost of $2,200.00 with money lent him by his brother. On further cross examination he admitted that he also owned a home-made conveyer, which he acquired at a cost of $300.00, and that he used all of this equipment in his gravel hauling business from December, 1946, to May, 1949, when he married the defendant Ruth Schriock and

moved from Carson to Elgin, North Dakota. He said that during this period of time he was incapacitated part of the time by an accident and that during the latter part of this period he operated a county motor patrol at a small wage. He stated that his monthly income during this period was less than the monthly support payment required by the divorce judgment and that he was unable to save any money.

The defendants William Schriock and Ruth Schriock both testified that through a loan which Ruth secured from an old friend, Ruth purchased a new truck in 1950 and began the trucking business, and that all property thereafter acquired was her property. She also testified that from an inheritance she purchased other construction equipment.

It is interesting, however, to note the following language used by the defendant William Schriock in explaining the purchase of the truck in 1950: "I and my wife bought a dump truck, and I went back into dumping work again."

The defendant William Schriock further testified that the old 1941 model truck was sold for $125.00 to $135.00 sometime prior to the purchase of the new truck, that the cleat tractor and loader were traded in for another tractor in 1952, the title to which was transferred to Ruth Schriock in 1954, and that Ruth paid the amount of mortgage indebtedness thereon.

The defendants stated that the defendant Ruth Schriock owned and operated a beauty parlor at the time they were married and for some period thereafter and conceded that the defendant William Schriock operated or managed the trucking business from the time of the purchase of the first truck by Ruth Schriock in 1950 to the time of this action, but they denied that he had any right, title, or interest in the business.

The business grew to a point where it involved thousands of dollars worth of equipment.

The defendants said that the defendant William Schriock managed the business part of the time for expenses and part of the time for a salary of $100.00 per month.

Exhibits offered by the defendants and received by the court include:

Insurance policies covering equipment used in the trucking business and naming Ruth Schriock as the insured;

Certificate of premium payment executed by an officer of the North Dakota Workmen's Compensation Bureau issued to Ruth S. Schriock;

Statement of an official of the North Dakota Workmen's Compensation Bureau indicating the record of a risk in the name of Ruth S. Schriock, doing business as Schriock Construction Company, for one period and a risk in the name of Schriock Construction, Inc., for another period;

Statement of an official of the North Dakota Unemployment Compensation Division to the effect that files in the office disclose the name of Ruth S. Schriock, doing business as Schriock Construction Company, as employer for one period and Schriock Construction, Inc., as employer for another period;

Bills of sale covering various pieces of trucking equipment, naming Ruth S. Schriock as owner;

Promissory notes executed by Ruth S. Schriock for large sums of money;

Subcontracts in connection with the trucking business executed by Ruth S. Schriock; and

Other miscellaneous documents indicating Ruth S. Schriock to be the owner or purchaser of various pieces of trucking equipment.

On the other hand, the plaintiff offered exhibits received in evidence, which include the following:

Photostatic copy of federal income tax return of Wm. and Ruth S. Schriock for

the year 1952, signed by Wm. Schriock as taxpayer and Ruth S. Schriock as wife of taxpayer, which indicates, in connection with the computation of self-employment tax, that William Schriock was engaged in the business of "Trucking & Machine work," in which he earned $900.26 and for which he determined that he was obligated to pay a self-employment tax of $20.25; and which further indicates that Ruth S. Schriock, as a beautician, had net self-employment earnings of $743.75 and was obligated to pay a self-employment tax of $16.73.

Photostatic copy of federal income tax return of Wm. and Ruth S. Schriock for the year 1953, signed by Wm. Schriock as taxpayer and Ruth S. Schriock as wife of taxpayer, which included trucking equipment in the depreciation schedule at a cost of approximately $37,000, for a depreciation allowance of $11,423.50.

Photostatic copy of federal income tax return of William and Ruth Schriock for the year 1954, signed by Ruth Schriock as taxpayer and William Schriock as taxpayer's husband, which included a computation of self-employment tax for William Schriock, designated as "Contractor—trucker and machine work," wherein it was determined that his self-employment income amounted to $1,085.25, subject to a self-employment tax of $32.56. This return also indicated that William Schriock received wages for this period in the sum of $2,514.75. The depreciation schedule listed construction equipment at a cost of approximately $102,000, with a depreciation allowance of $29,920.13. The net income from the construction business was stated to be in the sum of $24,175.20, with net income from the beauty shop being stated in the sum of $182.45. The joint federal tax for that year was computed to be $6,261.68.

Photostatic copy of federal income tax return of William and Ruth Schriock for the year 1955, signed by William Schriock as taxpayer and Ruth S. Schriock as wife of taxpayer, which contained a computation of self-employment tax for William Schriock as "Contractor," wherein $4,086.00 was listed as income subject to self-employment tax, and $122.58 was computed to be the tax. That part of the depreciation schedule covering the construction equipment listed the cost of the equipment at approximately $128,000, for a total depreciation allowance of $37,589.22.

Photostatic copy of federal income tax return of Ruth and William Schriock for the year 1956, signed by William Schriock as taxpayer and Ruth Schriock as wife of taxpayer, which included a computation of self-employment tax for Ruth Schriock as "Contractor," indicating that Ruth Schriock had $4,200.00 of self-employment income subject to self-employment tax, which tax was computed to be in the sum of $126.00. The depreciation schedule for this return lists taxpayer's name as Ruth Schriock and includes construction equipment in the amount of approximately $129,000, for a total depreciation allowance of $23,473.36.

Photostatic copy of federal income tax return of Ruth and William Schriock for the year 1957, signed by William Schriock as taxpayer and Ruth Schriock as wife of taxpayer, which included computation of self-employment tax for Ruth Schriock as "Contractor," wherein it was determined that Ruth Schriock had a self-employment income of $4,200.00 subject to tax, and a self-employment tax of $141.75. The depreciation schedule relating to the construction equipment listed equipment at a total cost of approximately $93,000.00 for a depreciation allowance of $16,622.62.

The defendant William Schriock, on cross examination, said he "doesn't remember" telling the plaintiff in 1949 that he was going to "fix things so that she was never going to collect the support money."

It is almost impossible for us to ascertain whether or not he made this statement, but it is quite obvious that this is what he tried to do.

The construction business was done under various names, including Ruth Schriock, Schriock & Sons Construction Company, Schriock & Sons, Ruth Schriock Construction Company, Schriock Construction Company, and Ruth S. Schriock doing business as Schriock Construction, from 1950 to 1959. In 1959 the corporation, Schriock Construction, Inc., was apparently formed; all the construction business property was then conveyed to the corporation; and the stock was distributed as follows: Ruth Schriock, 420 shares; Jerome Schriock (son of William Schriock), 20 shares; and William Schriock, Jr. (son of William Schriock), 20 shares.

The arrangement which the defendant William Schriock had as to salary carefully avoided an accumulation of income in his name. The highest salary that he acknowledged receiving, other than that which was indicated by the income tax returns was $100.00 per month, and this was at a time when his sons, employed as truck drivers in the same business, received wages of $500.00 per month.

█ As a trial de novo has been requested, it is our responsibility to review the entire record to determine the true facts.

█ Although the findings of the trial court are entitled to appreciable weight, they are not binding on this court.

"* * * while the decision of the trial court is entitled to appreciable weight, it is the duty of this court to carefully review and analyze the evidence, and to render a just decision based on the evidence in the case. * * *" Hendricks v. Porter, N.D., 110 N.W.2d 421.

The statements contained in the defendants' joint federal income tax returns for the years 1952, 1954, and 1955, relating to self-employment of the defendant William Schriock, are inconsistent with the testimony given by the defendants in the trial of this case.

Either the returns are false, or the testimony of the defendants before the trial court in regard to this issue of ownership and self-employment is false, as the two positions are irreconcilable.

As the returns made in the years 1952, 1954, and 1955 were made before the commencement of this action and also apparently before the commencement of the action to reduce the Oregon judgment to a North Dakota judgment, which latter judgment was secured in 1957, and because of the severe penalty which attaches a false statement made in a federal income tax return, the most reasonable conclusion is that the defendants' statements in regard to ownership and self-employment contained in the tax returns are true and that the testimony given subsequent thereto in district court in connection with this action is affected by the interest of the defendants in avoiding the payment of the judgment and is therefore questionable.

The early federal income tax returns filed by the defendants William Schriock and Ruth Schriock, following their marriage in 1949, list in the depreciation schedules various pieces of construction equipment acquired by the defendant William Schriock prior to his marriage to the defendant Ruth Schriock.

This further supports the plaintiff's contention that equipment owned and used by the defendant William Schriock in the gravel hauling or trucking business prior to his marriage to the defendant Ruth Schriock was retained and used by the defendants in their trucking business after their marriage.

Considering the importance placed on the information contained in the income tax returns, it is necessary that we consider at this time the objection made to the introduction of these returns by the defendants in the trial court. Basically, the de-

fendants' objection to the introduction of the income tax returns was that both the state and federal income tax returns are privileged communications. In support of this objection, the defendants cited a 1945 decision of the Supreme Court of South Dakota. In an action for divorce, the circuit court entered an order requiring the defendant to furnish copies of his federal income tax returns for certain years or, if such copies were not in his possession, custody, or control, to procure such copies from the United States Internal Revenue Department. The Supreme Court reversed the circuit court order, after reviewing the South Dakota statute providing for production of documents and the relevant federal statutes and rules, by saying:

"According to these statutes and rules, the income tax returns in question are the property of the United States, in the official custody of federal officers and employees. The plaintiff has no right to inspect, nor to obtain copies of them. The court has no power to compel the production of these records on subpoena duces tecum, or otherwise. The only means provided for the production of the copies for use in this case is the written application of the defendant therefor. The files are therefore privileged, within the meaning of SDC 36.0601. The defendant alone can waive that privilege in this case, by voluntarily making application for the copies. This he has refused to do, and he has objected to the order of the circuit court directing him to do so. If the defendant must comply with the order, his application for the copies will be made under judicial compulsion. His privilege will not in that case ͵be waived, and the copies if so obtained would not be admissible in evidence at the trial. Discovery under those circumstances would be futile and unjust. Ragland, Discovery Before Trial, 146." Peterson v. Peterson, 70 S.D. 385, 17 N.W.2d 920, at 921.

Our state law on this subject reads as follows:

"57–38–57. Secrecy as to returns—Penalty.—The secrecy of returns shall be guarded except as follows:

"1. Except when otherwise directed by judicial order, or as is otherwise provided by law, the tax commissioner, his deputies, agents, clerks, and other officers and employees, shall not divulge nor make known, in any manner, the amount of income, or any particulars set forth or disclosed in any report or return required under this chapter. * * *" North Dakota Century Code.

This statute obviously makes state income tax returns available in litigation when ordered by the court, where the information contained therein is relevant to the subject matter involved in the action. This conclusion is in accord with our rule of civil procedure providing for production of documents.

"RULE 34. DISCOVERY AND PRODUCTION OF DOCUMENTS AND THINGS FOR INSPECTION, COPYING OR PHOTOGRAPHING

"(a) Discovery on Court Order. In addition to the right to obtain the production of any document or thing for inspection in connection with an examination under Rule 26 or interrogatories under Rule 33, any party may move the court, subject to the provisions of Rule 30(b), for an order upon another party (1) to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody,

or control; or (2) to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property of any designated object or operation thereon within the scope of the examination permitted by Rule 26(b); or (3) to direct any party to file a verified list of any of the foregoing items, whether undisclosed or not, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26 (b) and which are or have been in his possession, custody, or control. Matters discovered under subdivision (3) shall be subject to a motion for an order under subdivisions (1) and (2) of this rule. The order shall specify the time, place, and manner of making the discovery, production or inspection and taking the copies and photographs and may prescribe such terms and conditions as are just. * * *" North Dakota Rules of Civil Procedure.

In connection with the federal tax returns, Corpus Juris Secundum has this to say:

"The right to inspect income tax returns is strictly limited to the governmental agencies enumerated in the Internal Revenue Code, 26 U.S.C.A. § 55, and similar statutes, but such statutes do not preclude a court of competent jurisdiction from requiring a disclosure of a tax return by the taxpayer in connection with civil litigation to which he is a party." 47 C.J.S. Internal Revenue § 641.

In a 1958 decision of the United States District Court for Nebraska in a negligence action in which the plaintiff claimed loss of earnings and the defendant moved for production and inspection of copies of the plaintiff's income tax returns for five specified years, the district court held that it was reasonably probable that returns would con-tain material evidence and that their production for the five years specified would be ordered. The following is a portion of the district judge's discussion of this question:

"This matter is before the Court upon the Motion For Production and Inspection of Documents of defendant, under Rule 34 of the Federal Rules of Civil Procedure 28 U.S.C.A. (filing Number 6). Specifically, the defendant requests production of copies of plaintiff's income tax returns for the years 1953, 1954, 1955, 1956 and 1957 for copying or photographing.

"The Motion is supported by the affidavit of one of defendant's attorneys relating to the materiality of the evidence.

"The suit is one for negligence praying judgment for $354,000. It is claimed that by reason of personal injuries and permanent disability suffered by plaintiff as the alleged proximate result of defendant's negligence, the plaintiff has suffered loss of earnings since the accident which occurred December 9, 1957 and that he will continue to lose earnings in the future.

"The authorities are divided on whether or not under Title 26 U.S.C.A. Section 6103, income tax returns are privileged. The greater number of decisions numerically favor the view that in private civil litigation production may be required. The Court prefers that view. In this case the earnings of plaintiff will be an important factor in the amount of a verdict if plaintiff recovers. It is reasonably probable that the returns will contain material evidence because they will help to disclose plaintiff's employment record prior to the accident. The names of employers is sometimes material in investigation as to prior accidents, if any, and the amount of plaintiff's earnings has a definite and material relationship to the issue of damages.

"District Judge Bryan in discussing this matter has stated:

"'The Internal Revenue Code of 1954, § 6103, 26 U.S.C., like the Code of 1939, former § 55, 26 U.S.C., protects taxpayers against public disclosure of the contents of tax returns. This policy is underscored by the penal provisions of the Code which make it unlawful for any Federal or State officer or employee to divulge such matter "in any manner whatever not provided by law". 26 U.S.C. § 7213. The Regulations, § 458.52, provide that the return of a living individual shall be open to inspection "by the person who made the return or by his duly constituted attorney in fact". The only other persons entitled to the inspection of the return in the hands of the Government are the various governmental agencies having a legitimate interest in the subject matter as provided in Section 6103 of the Code.

"'These provisions, plaintiff contends, give him an absolute privilege against discovery of his returns in this lawsuit. I do not find such privilege conferred by either the statutes or the regulations under the circumstances presented here.

"'The purpose of the statute is to prevent the disclosure of confidential information to those who do not have a legitimate interest in it. But once a person has made the amount of his income an issue in litigation it becomes a legitimate subject of inquiry and he can no longer claim that the information contained in his returns is confidential. If the returns were in his own possession he could be compelled to produce them, and there is no good reason why he should not obtain copies from the Government at defendant's expense or permit the defendant to do so.' Kingsley v. Delaware, Lackawanna & Western Railroad Co. [D.C.], 20 F.R.D. 156, 158." Bush v. Chicago, Burlington & Quincy Railroad Company [D.C.], 22 F.R.D. 188, at 189.

In a decision rendered by the Court of Common Pleas of Ohio in 1958, the court cited decisions of various courts which had refused to grant an order of production in connection with income tax returns, as well as decisions of the courts which had granted such orders; and, in determining that copies of the plaintiff's federal income tax returns were not privileged against disclosure, directed the plaintiff to produce copies thereof. The court, in so determining, concluded that its decision was in accord with a clear and growing majority of the courts across the land. Mandell v. Yellow Cab Company of Cleveland, Ohio Com.Pl., 170 N.E.2d 296.

In a 1963 decision of the Supreme Court of Alabama, that court came to this conclusion:

"We are of opinion that neither federal nor state statute makes copies of the returns privileged. Probably the best statement supporting this view is as follows:

"'As the District Court of Massachusetts said in Tollefsen v. Phillips [D.C.], 16 F.R.D. 348, at page 349, in passing on the precise issue presented here:

"'"* * * The plaintiff asserts that federal tax returns are not reachable by court order because 26 U.S.C.A. § 55 forbids their exhibition to anyone except certain designated persons without presidential order. It is true that if the government should determine that its interests in obtaining the fullest disclosure of pertinent information by taxpayers would be furthered by preventing the use of copies of returns in court, it could so provide. Cf. United States v. Dickey, 268 U.S. 378, 45 S.Ct. 558, 69 L.Ed. 1006. I do not, however, so read

the statute. The purpose of § 55 appears to be to prevent wholesale revelation of confidential information to persons not determined to have a legitimate interest therein. The plaintiff, having made his earnings an issue, can scarcely say that they are confidential information in this case.

" ' "The incidental effect, and perhaps an intended one, of the statute is to exempt the taxing authorities from process. But this does not mean that the taxpayer himself, as plaintiff, is so exempt.

" ' "If the plaintiff had a complete set of books and records which showed the figures that went into his returns, no one would say that he could not be ordered to produce them. The same information does not, unless the statute be very explicit, become any the less obtainable just because the plaintiff has written it down on a governmental form." ' Kingsley v. Delaware, Lackawanna & Western R. Co., D.C.S.D.N.Y., 20 F.R.D. 156, 158, 159." Constantine v. Constantine, 274 Ala. 374, 149 So.2d 262, at 266.

In the instant case, whether defendant William Schriock reported self-employment income from the construction business allegedly owned by his second wife, and whether his second wife reported self-employment income from other than her beauty shop, were material in determining whether the defendant William Schriock actually had an interest in the said construction or trucking business.

■ In light of the wording of our state statute, Section 57–38–57 of the North Dakota Century Code, of Section 6103 of Title 26 of the United States Code, of Rule 34 of the Rules of Federal Procedure, and of Rule 34 of the North Dakota Rules of Civil Procedure, we conclude that neither the state nor the federal income tax returns nor copies thereof were privileged communications. The district court's order directing the defendant William Schriock to produce his income tax returns for the years 1947 to 1956, inclusive, and to permit the plaintiff at the plaintiff's expense to inspect and copy them, was proper.

In addition to the information in the income tax returns strongly indicating that the defendant William Schriock had an interest in the construction business, we find that the defendant William Schriock was engaged in the trucking business before he married the defendant Ruth Schriock; that part of the equipment which he used before he married the defendant Ruth Schriock was used in connection with the business after his marriage to said defendant; that he negotiated the construction contracts, employed and discharged all the construction employees, supervised all construction work, and signed promissory notes with his wife for construction business.

Because the records of the construction business are so important in this case, another matter is deserving of consideration. The day before the defendant Ruth Schriock was to appear in court in connection with the proceedings supplementary, she burned records of the construction business which had been subpoenaed. She testified that she kept these records in the basement of her house, that they became wet and soiled when the sewer backed up, and that, although they had dried considerably, they were still mildewed. Her justification for burning the records was that they caused an offensive smell in the office and were no longer recognizable.

Under the circumstances, this action on her part causes us to suspect her explanation.

In a case where a divorced wife attempted to collect a divorce judgment against her husband through a bill in

equity, the Pennsylvania Supreme Court in 1950 said:

"Before analyzing the evidence adduced to support the charge it should be remembered that fraud of this nature is never proclaimed from the housetops nor is it done otherwise than surreptitiously with every effort usually made to conceal the truth of what is being done. So fraud can rarely if ever be shown by direct proof. It must necessarily be largely inferred from the surrounding circumstances. As was written by one of the great Chief Justices of this Commonwealth, Black, in Kaine v. Weigley, 1853, 22 Pa. 179, at pages 183–184, 'It is said that fraud must be proved, and is never to be presumed. This proposition can be admitted only in a qualified and very limited sense. * * * It amounts to but this: that a contract, honest and lawful on its face, must be treated as such until it is shown to be otherwise by evidence of some kind, either positive or circumstantial. It is not true that fraud can *never* be presumed. Presumptions are of two kinds, *legal* and *natural*. Allegations of fraud are sometimes supported by one and sometimes by the other, and are seldom, almost never, sustained by that direct and plenary proof which excludes all presumption. A sale of chattels without delivery, or a conveyance of land without consideration, is conclusively presumed to be fraudulent as against creditors, not only without proof of any dishonest intent, but in opposition to the most convincing evidence that the motives and objects of the parties were fair. This is an example of fraud established by a mere presumption of law. A natural presumption is the deduction of one fact from another. For instance: a person deeply indebted, and on the eve of bankruptcy, makes over his property to a near relative, who is known not to have the means of paying for it.

From these facts a jury may infer the fact of a fraudulent intent to hinder and delay creditors. A presumption of fraud is thus created, which the party who denies it must repel by clear evidence, or else stand convicted. When creditors are about to be cheated, it is very uncommon for the perpetrators to proclaim their purpose, and call in witnesses to see it done. A resort to presumptive evidence, therefore, becomes absolutely necessary to protect the rights of honest men from this, as from other invasions. * * * It is no hardship upon an honest man to require a reasonable explanation of every suspicious circumstance, and rogues are not entitled to a veto upon the means employed for their detection.'

\* \* \* \* \* \*

"Even in a regularly organized corporation a chancellor will not be deceived by corporate forms but will 'look behind that artificial personality, and, if need be, ignore it altogether, and deal with the individuals who constitute the corporation'. Kendall v. Klapperthal Co., 1902, 202 Pa. 596, 607, 52 A. 92, 96; S. G. V. Co. of Del. v. S. G. V. Co. of Pa., 1919, 264 Pa. 265, 269, 107 A. 721. What was there said concerning one man companies applies equally here in the circumstances so far shown.

\* \* \* \* \* \*

"In short this is clearly a case where the defendants must be required to produce proofs to meet the inferences deducible from the evidence recited. This is no hardship if the transaction was honest as claimed. If not, then the wrong-doers must expect no protection in a court of equity." Shechter v. Shechter, 366 Pa. 30, 76 A.2d 753.

Although the facts in that case differ from the facts in the instant case in some respects, it is relevant in that it points out that fraud may be proved by indirect evidence.

The language used by this court in a case involving a transfer of real estate from a husband to a wife is significant:

"* * * Where the contest is between the husband's creditors and the wife over property which the wife claims, but which there are probable grounds for believing belongs to the husband, it is incumbent on the wife to show by satisfactory evidence that she purchased and paid for the property from her separate estate. Gettleman v. Gietz, 78 Wis. 439, 47 N.W. 660, Horton v. Dewey, 53 Wis. 410, 10 N.W. 599; Smith v. Tosini, 1 S.D. 632, 48 N.W. 299. Clear and satisfactory proof of a wife's claim against her husband is exacted where the wife asserts that he transferred property to her in payment thereof. Note 56 L.R.A. 830, and cases cited; Le Saulnier v. Krueger, 85 Wis. 214, 54 N.W. 774; Minneapolis Stockyards & Packing Co. v. Halonen, 56 Minn. 469,.57 N.W. 1135. During the entire time that defendant D. F. Chandler was in business at Osakis and St. Charles, with the exception of the last few months at St. Charles, from April, 1905, until August, 1905, public records showed that he was a man of property and solvent. While she may have invested some money in the Osakis Milling Company, and afterwards loaned the proceeds of her interest therein to her husband, and while there may have been some understanding between them that he would repay her, yet we do not think it was such a definite understanding or agreement as should under the circumstances be held to be a contract between husband and wife as against the creditors of the former. Clark v. Rosenkrans et al., 31 N.J.Eq. 665; Frank v. King, 121 Ill. 250, 12 N.E. 720; Hanson v. Manley, 72 Iowa 48, 33 N.W. 357; Wake v. Griffin, 9 Neb. 47, 2 N.W. 461. The circumstances point conclusively to the fact that the property was transferred to Josephine Chandler for the purpose of placing it beyond the reach of her husband's creditors, and was transferred by her to defendant Wm. E. Chandler for the same purpose. No other conclusion can be reached from a review of the whole of the evidence. The deeds were therefore fraudulent so far as plaintiff's judgment was concerned." Meighen v. Chandler, 20 N.D. 238, 126 N.W. 992.

The defendants' contention that the construction business is completely owned by Ruth Schriock and that the defendant William Schriock merely works for a nominal sum or that he gratuitously works for the corporation and that this is not fraudulent is an argument deserving of consideration.

■ At this point a reference to Corpus Juris Secundum is relevant.

"A husband may donate his services to his wife in her separate business without rendering the property or claims thereby acquired by her subject to his creditors' claims; but the principle applies only if the business is actually the wife's and not a device to keep from his creditors the income of a business which is actually his own business.

"In accordance with the general principle stated supra subdivision a, of this section, if a husband donates his services to his wife, in working for her in a business owned and conducted by her as her separate property, or as her agent in executing a contract made by her with a third person, or, a fortiori, where the husband is employed by the wife on a salary, it is held that the husband's creditors cannot by reason of such donation of his services or employment reach and subject the property or claims thereby acquired by the wife; and this principle applies however valuable may be the services of the husband, and although he is insolvent.

"For the principle to apply, it must appear that the business is actually the wife's and not a device to keep from the husband's creditors the profits and income of a business which is really his own. The principle has no application where a husband, for the purpose of defrauding his creditors, does business in his wife's name but for his own benefit, and an insolvent debtor cannot defeat creditors by simply transferring his property to his wife and managing it for her as her agent." 37 C.J.S. Fraudulent Conveyances § 16.

In the instant case we reach the conclusion from a consideration of all the facts and circumstances that the entire arrangement between defendants William and Ruth Schriock was merely a device to avoid the payment of the plaintiff's judgment. The interest of the defendant William Schriock in the construction property was transferred to the corporation in fraud of his former wife, a creditor. It is unnecessary for us to determine the respective interests of the defendants William and Ruth Schriock in the corporation, as these parties own all but a few shares of the corporate stock, and the value of the interest of the defendant William Schriock is at least equal to the amount of the plaintiff's judgment.

■ That the corporate entity may be disregarded in a case of this type is clear.

" * * * a court of equity will on a proper occasion disregard the legal fiction of separate corporate existence." Sunset Farms v. Superior Court, 9 Cal.App.2d 389, 50 P.2d 106, at 111.

" * * * If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons." Fletcher, Private Corporations Sec. 41 (1963 rev. vol.).

■ In this case the separate corporate entity is clearly only a mask for the continuation of the business originally owned and operated by the defendants William Schriock and Ruth Schriock to fraudulently avoid the judgment of the plaintiff creditor. The mask must for this reason be removed.

It is therefore decreed that the property of the defendant corporation is subject to levy and sale for the satisfaction of plaintiff's judgment.

The judgment of the district court is reversed, and the case is remanded with instructions to the district court to order judgment in conformity with this opinion.

MORRIS, C. J., and BURKE and TEIGEN, JJ., concur.

STRUTZ, J., deeming himself disqualified did not participate.